142    29
e144 ³447

142    29
f150 ²315

142    29
f155   ²566

142    29
157   ²419

## BRUNSWICK-BALKE-COLLENDER CO. *v.* NORTHERN ASSURANCE CO.

1. INSURANCE—FIRE—INSURABLE INTEREST.

   The seller of goods on a contract of conditional sale is the holder of the legal title, and has an insurable interest.

2. SAME—DESCRIPTION OF PROPERTY—TITLE OF INSURED.

   A fire-insurance policy, providing that it should be void if the interest of the insured was other than unconditional and sole ownership, described the property as the property of the insured, who held the legal title thereto, subject to the rights of a buyer to acquire title by performance of a contract of sale, but there were no representations made by insured in procuring the policy, and the application therefor was verbal. *Held,* that the policy was valid, as the insurer could not complain of its own negligence in failing to require a more specific description.

3. SAME—AVOIDANCE OF POLICY—FRAUD.

   A stipulation in a fire-insurance policy that it shall be void if the insured has concealed or misrepresented any material fact, or in case of any fraud or false swearing touching any matter relating to the insurance, refers to actual fraud, and requires proof of a fraudulent intent, and hence the unintentional listing of property removed from the burned building before the fire will not avoid the policy.

4. SAME—PROOFS OF LOSS—SUFFICIENCY.

   Where the insured in a fire-insurance policy is a nonresident of the State, the proof of loss need not be sworn to by him, as required by the policy, but may be made and sworn to by his agent.

Error to Delta; Stone, J. Submitted October 12, 1905. (Docket No. 44.) Decided November 21, 1905.

Assumpsit by the Brunswick-Balke-Collender Company against the Northern Assurance Company on a policy of insurance. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Reversed.

*Cummiskey'& Yelland*, for appellant.

*T. B. White* (*Myron H. Beach*, of counsel), for appellee.

BLAIR, J.   Plaintiff, an Illinois company, located at Chicago, brought this action on a Michigan standard form insurance policy for $1,100, to recover for the total loss by fire of certain saloon fixtures covered by the policy.   The property in question was sold by plaintiff to Rawson Bros., of Escanaba, in this State, with a reservation of title to itself, as evidenced by the notes given for the balance of the purchase price, each of which contained the following clause, viz. :   " Title to remain in the Brunswick-Balke-Collender Co. until the goods are fully paid for."   A chattel mortgage was also given by Rawson Bros. to plaintiff upon this property to secure payment of the notes. The plaintiff, having authorized Rawson Bros. to procure insurance on the property in its name, one of the firm employed one McKana, an insurance agent, to apply to one Linden, defendant's agent at Escanaba, for the policy. In accordance with his instructions, Mr. McKana "went to Mr. Linden, and asked this insurance as covered by this policy.   I got two policies from Mr. Linden, including the policy in question.   I turned them over to Mr. Rawson.   They were both issued to the Brunswick-Balke-Collender Co."   There was no written application for the policy, and, so far as the record discloses, no specific representations were made by or in behalf of the plaintiff in procuring it.   The policy was issued and delivered on the 30th day of November, 1901, and covered, among other articles, "1 4x8 pool table, with complete outfit," of the value of $200.   On the 19th day of April, 1902, the property insured was entirely destroyed by fire.   Prior to the fire, Rawson Bros. had turned the above-mentioned pool table over to plaintiff, and it had been shipped out of the State, and was not in the building when the fire occurred.   On the 6th day of June, 1902, plaintiff executed and served, by registered mail, upon defendant, proofs of

loss, containing, among other things, the following statements:

"2. The property thus insured at the date of policy and time of fire hereinafter mentioned belonged to the said Brunswick-Balke-Collender Co., and no other person or persons had any interest therein, except as follows: That on or about the 1st day of November, 1901, the said Brunswick-Balke Collender Co. sold and transferred all of said property to Nels W. Rawson and Guy C. Rawson, copartners doing business under the firm name of Rawson Bros., of Escanaba, Michigan, and that upon the said 1st day of November, 1901, in consideration thereof, the said Rawson Bros. executed and delivered to the said Brunswick-Balke-Collender Co. a chattel mortgage upon said property for the sum of fourteen hundred dollars, which said chattel mortgage was duly filed in the office of the city clerk of the city of Escanaba on the 1st day of November, 1901; that since the fire the insured has been informed that on or about the 9th day of April, 1902, the said Nels W. Rawson and Guy C. Rawson executed and delivered to Viola Rawson a bill of sale of all of said property; that said policy of insurance was made and issued for the purpose of securing the interest in and to said property of the said Brunswick-Balke Collender Co.

"5. The whole value of the property amounted to the sum of twenty-one hundred sixty-five dollars ($2,165), which was the actual cash value at the time immediately preceding the fire, set forth in the annexed 'Schedule A.'

"6. The whole amount of loss sustained is twenty-one hundred sixty-five dollars ($2,165), as set forth in the annexed 'Schedule A.'"

Among other items in Schedule A was the $200 pool table. The proofs of loss were signed and verified by Mr. Cummiskey as follows:

"Witness my hand at the city of Escanaba, this 6th day of June, A. D. 1902.
"Brunswick-Balke-Collender Company,
"By John Cummiskey, Its Agent and Attorney."
"State of Michigan, } ss.:
   County of Delta. }
"On this 6th day of June, 1902, personally appeared John Cummiskey, the signer of the foregoing statement, and made oath that he is the agent and one of the attor-

neys for, and makes this statement and affidavit for and in behalf of, the said Brunswick-Balke-Collender Co., of Chicago, Illinois, the insured mentioned in said policy; that he knows the facts stated in said proof of loss, and that said statement is just and true according to the best of his knowledge and belief, and to the best knowledge and belief of the said Brunswick-Balke-Collender Company.

" John Cummiskey.

" Subscribed and sworn to before me, this 6th day of June, A. D. 1902.

" Zella Cox,
" Notary Public, Delta County, Mich."

So far as this record discloses, Mr. Cummiskey made this affidavit in good faith, believing the proofs of loss to contain an accurate statement of facts, and without any fraudulent intent.

Upon the conclusion of plaintiff's proofs, defendant's counsel moved for a verdict in its favor, which motion was granted, and a verdict directed by the court for the following reasons, as summed up at the end of his opinion:

" I think it is my duty to direct a verdict here for the defendant in this case, and I do it upon the ground that the policy is shown to be void from the fact that it appears here that the plaintiff was not the sole and unconditional owner of the property, and that in the proofs of loss there were gross misstatements of facts sufficient in the law to operate as a fraud upon the defendant company in the particulars which I have pointed out, which, among other things, embraces the same question of the chattel mortgage."

With reference to the proofs of loss, we quote the opinion of the court more in detail, as follows:

" The objection is made here that the proof of loss has not truthfully stated the condition of this property: *First.* In that it states that the plaintiff has sold this property, and instead of being the unconditional owner of it, or the owner of the title of it all, shows it to have been but a chattel mortgagee. The proof of loss here made by Mr. Cummiskey, one of the attorneys for the plaintiff, under the authority and acting for the plaintiff, in the

light of the statement made by counsel in the opening of
his case to the jury, did not make a truthful statement
in the proof of loss in regard to this. I am not now
using the words 'false statement,' which to my mind
means a little more. It was not truthful. The state-
ment of the plaintiff's counsel in the opening of this case
to the jury took the position that this plaintiff had sold
this property conditionally; but, when we turn to the proof
of loss, we find the agent who represents this plaintiff
swearing that the plaintiff was a chattel mortgagee of
this property.

"Now, it seems to me that where facts are within the
knowledge of a party, as it must be inferred here from the
evidence that this plaintiff corporation had knowledge of
the facts, and where it delegates to an agent the duty or
right to make proof of loss, and where that agent swears
that he has knowledge of the facts and correctly states
the facts, that so wide a departure from the facts may
well operate as a fraud upon the insurance company.
Whether such fraud was intended or not, the result of it
is to misrepresent the condition and state of facts to the
company.

"Then, again, it appears here by the plaintiff's own
testimony that one of the pool tables—I believe not the
most valuable one, but a pool table of the value of at least
$200, as shown by the proof of loss—it is, I say, stated in
the testimony offered here by the plaintiff that this pool
table was in the building and destroyed by this fire. It so
appears, I should say, by the proof of loss. By testimony
offered here by witnesses of the plaintiff, it appears that
this pool table had been returned to the plaintiff as early
as the month of December prior to the time of the fire,
which occurred in April. Now, here again the agent may
have innocently—and we will presume did innocently—
state the matter as he understood it. But he was mistaken
in the facts. It cannot be supposed for a moment that
this plaintiff did not know the fact, and I think knowledge
of the plaintiff must be charged up to it here. And where
it delegates authority to an agent to make statements of
that kind, it must be held to the responsibility that follows
that of untruthful statements and misrepresentations to
an insurance company, which must operate as a fraud.

"Now it does not meet the question to say that the
amount of insurance that they claim here is much less than
the aggregate value of this property. The question

is, Was it a material statement? Was it material? If it was material to state the kind and class and value of the property destroyed, then this was a material matter."

The policy contains a provision that "this entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void   *   *   *   if the interest of the insured be other than unconditional and sole ownership." It has been held by this court that in case of an oral application for insurance, the applicant is not required to show the exact condition of his title, unless requested to do so. *Guest* v. *Insurance Co.*, 66 Mich. 98, and cases cited. And if the applicant is guilty of no misleading conduct, the insurer in such a case must be taken to assume the risk of undisclosed incumbrances. *Gristock* v. *Insurance Co.*, 87 Mich. 428. In *Miotke* v. *Insurance Co.*, 113 Mich. 166, it was said, referring to the clause under consideration, that " the day has gone by in Michigan for successfully contending that the mere acceptance of a policy containing a condition like this makes it conclusive against the holder, who accepts it in ignorance of the clause, and whose title does not conform to the strict letter of the condition." In *Hoose* v. *Insurance Co.*, 84 Mich. 309 (11 L. R. A. 340), the policy contained the following provisions :

" This entire policy, and every part thereof, shall become void unless consent in writing is indorsed by the company hereon in each of the following instances, viz. :
" If the assured is not the sole and unconditional owner of the property ; or if any building intended to be insured stands on ground not owned in fee simple by the assured ; or if the interest of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee, or otherwise, is not truly stated in this policy ; or if any change take place in the title, interest, location, or possession of the property (except in case of succession by reason of the death of the assured), whether by sale, transfer, or conveyance, in whole or in part, or by legal process or judicial decree; or if the title or possession be now or hereafter become involved in litigation; or if this policy be assigned or transferred before a loss."

It was said by the court :

"In construing this portion of the policy, the whole must be taken together. Now the object sought to be accomplished by the person applying for insurance was to obtain indemnity against loss by fire of her interest in the building. If the insurance company which made out this policy, upon the verbal application to its agent, had desired to know what interest it was it was insuring, it should have stated it in that part of the policy pertaining to the risk. It was the intention of these parties to issue a valid and binding contract of insurance, valid and binding from the time of acceptance of the same by the assured, not that after it had been accepted by the assured, then the assured should apply to the company, and obtain its consent in writing indorsed on the policy, stating that the assured was not the sole and unconditional owner of the property, or stating that the building intended to be insured stood on ground not owned in fee simple by the assured, or stating, by indorsement on the policy, the interest which the assured had in the property covered by the insurance; and yet the language of this part of the policy is that the entire policy, and every part thereof, shall become void—that is, void in the future—unless such consent in writing is indorsed by the company thereon. To give any reasonable force and effect to this clause of the policy, it can only be held to apply to such changes as arise after the policy has been delivered and accepted, in the ownership of the property, or, if a building stood upon leased ground, the ownership of the building; and it does not apply to an existing state or condition of the property at the time the policy was issued. It looks to the future for protection of the insurer, and not to the present, only in so far as the preceding portion of the policy is violated by a misstatement or concealment of any fact material to the risk."

This case was followed in *Hall* v. *Insurance Co.*, 93 Mich. 184 (18 L. R. A. 135). While the language of the policy construed in the *Hoose Case* was "shall *become* void," and in the case at bar it is "shall be void," we do not regard this difference in verbiage as requiring a different construction with reference to the clause as to unconditional ownership.

In the case at bar the plaintiff had an insurable interest. It had the legal title and was the owner of the property

insured, subject to the rights of Rawson Bros. to acquire
its title by performance of the contract of sale. The only
actual description of their interest in the property con-
tained in the policy was the language, "$1,100 on *their*
saloon furniture and fixtures," etc. This was a true de-
scription, and defendant cannot complain because of its
own negligence in failing to require a more specific de-
scription.

The policy contained a provision that "this entire policy
shall be void if the insured has concealed or misrepre-
sented, in writing or otherwise, any material fact, * *
* or in case of any fraud or false swearing on the part of
the insured touching any matter relating to this insurance
or the subject thereof, whether before or after a loss."
The learned trial judge seems to have drawn a distinction
between fraud and false swearing as to the intent required,
and to have held that a fraudulent intent was not neces-
sary to constitute fraud under the above provision. We
think the distinction is not a sound one. In 1 Clement on
Fire Insurance, p. 276, Rule 3, the rule is stated as follows:

"Fraud or false swearing implies something more than
mistake of fact or honest misstatements on part of
assured. They may consist in knowingly and intention-
ally stating upon oath what is not true, or a statement of
a fact as true which the party does not know to be true, and
which he has no reasonable ground of believing to be
true."

We think that the fraud referred to in this clause must
be held to be actual fraud, and that the same rule applies
which, in case the charge is false swearing, as we have
heretofore held, requires proof of a fraudulent intent.
*Knop* v. *Insurance Co.*, 107 Mich. 323. *Tiefenthal* v.
*Insurance Co.*, 53 Mich. 306.

Counsel for defendant contend that the judgment should
be sustained for reasons not assigned by the trial judge,
viz.: (1) The policy was voided by other insurance. (2)
The proofs of loss were not sworn to by the insured, as re-
quired by the policy. We do not regard either of these

points as well taken under the circumstances of this case. Plaintiff's vice president and manager (Bensinger) testified:

"We had no other insurance on this property. We had a floating policy, but it did not cover this particular loss. * * * We had a floating policy covering our interest on the property in Michigan, and in force at the time of the fire," etc.

The policy is not printed in the record, and we cannot say, in opposition to Mr. Bensinger's testimony, that it did cover this particular loss. The plaintiff was a nonresident, and within the exception to the general rule. 1 Clement on Fire Insurance, p. 206, Rule 16; *McGraw* v. *Insurance Co.*, 54 Mich. 145; *Burns* v. *Insurance Co.*, 130 Mich. 561.

For the errors above pointed out, the judgment is reversed, and a new trial granted.

MOORE, C. J., and MCALVAY, GRANT, and OSTRANDER, JJ., concurred.