KENNEDY v. LONDON & LANCASHIRE FIRE INSURANCE CO.

1. INSURANCE—TITLE—LIENS FOR TAXES.
   A statement by the husband of the insured to defendant's agent that there were some back taxes on the property which he intended to clear up, was not notice of the fact that two years later, when a policy of insurance was written, the land had been sold for taxes to a third person.

2. SAME.
   Want of notice as to the state of the title is not a defense to an action on a policy of insurance where no representations were made to secure the policy, and the agent transferred the insurance from another company which he had represented to the defendant under instructions to keep the property insured; the risk of tax liens being thereby assumed by the defendant.

3. TAXATION—DATE OF SALE—VOID DECREE.
   A decree of sale for delinquent taxes fixing a date earlier than that prescribed by statute, invalidates the proceedings, when the sale was held on the earlier day.

4. JUDGMENTS—TAXATION—WRIT OF ASSISTANCE.

Upon an application for a writ of assistance by a purchaser at a delinquent tax sale, the insurer of buildings on the premises is not a necessary party, and the judgment denying the writ and declaring the tax sale void is conclusive.

5. EVIDENCE—INSURANCE—PROOF OF LOSS.

The proofs of loss relating to the insurance policy on which suit was brought are incompetent to show the ownership, fact of loss or amount thereof; but the error in refusing to so charge is not prejudicial where the facts were shown by other uncontradicted evidence.

6. SAME—CONCLUSIONS—OPINION EVIDENCE—TITLE.

Testimony that plaintiff owned the insured real property is incompetent, but not reversible error when the ownership was otherwise established.

Error to Wayne; Donovan, J. Submitted May 6, 1909. (Docket No. 67.) Decided July 6, 1909.

Assumpsit by Marion Kennedy against the London & Lancashire Fire Insurance Company on a policy of insurance. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Lehman, Riggs & Lehman,* for appellant.

*Maybury, Lucking, Emmons & Helfman,* for appellee.

BLAIR, C. J. Plaintiff brought suit upon an insurance policy issued by defendant April 1, 1906, to recover her loss upon her hotel property, known as the Astor House, in Bay City. Defendant's local agent, Ames, had been carrying insurance on this property in other companies for a long time under an arrangement with plaintiff's husband, who represented her.

" He left it to me to carry $4,000 on that property, and to place it in whatever company I wanted to, and I did so. I think it had been carried in the Atlas, and, when that policy expired on the first of April, I renewed it in the defendant company, because I did not then have the

Atlas in my issues, and to keep it in my business I transferred it to this company. My letter accompanying the policy would notify Mr. Kennedy of the change. My letter was dated the second of April. I did not notify him what company I was in. It was all right so long as it was in some good, reliable company."

Mr. Ames had been familiar with the Astor House property since 1876. He usually kept plaintiff's policies in his own safe. The policy in suit was forwarded to plaintiff's husband at Detroit April 2, 1906. Since 1902 plaintiff and her husband had lived in Detroit. No written application was made.

On the 20th day of April, 1904, the circuit court for the county of Bay, in chancery, made a decree and order of sale on account of delinquent taxes for the year 1901. The property covered by such decree included the insured property. On the 25th day of May, 1905, Mary L. Farley of Flint purchased the State's interest in the property, and received a deed thereof from the auditor general on June 26, 1905. Proof of service of notice for reconveyance was filed November 13, 1905. Petition for writ of assistance was filed by Mrs. Farley on November 22, 1906, to which Mrs. Kennedy filed her answer, claiming that the decree relied upon was void. The matter came on to be heard on pleadings and proofs in open court on January 7, 1907, and a decree was entered, holding the decree and original sale void and dismissing the petition upon condition that Mrs. Kennedy pay to the petitioner the taxes of 1901, 1902, and 1903 and interest at 12 per. cent. to date, and all costs and charges paid by petitioner as a part of the purchase price. Mrs. Kennedy complied with the condition of the decree, and received a quitclaim deed from Mrs. Farley on the 8th day of January, 1907. The fire occurred on April 9, 1906. On the 7th day of June, 1906, plaintiff made and served proofs of loss which were returned to her on July 24th by defendant's attorney, with notice that the company declined to pay said loss, for the reason that the policy was void for various reasons specified.

On the subject of the taxes, Mr. Kennedy testified:

"*Q*. Did you ever tell Mr. Ames that the taxes for 1901, 1902, and 1903 had been unpaid, so as to become a lien in favor of the government?

"*A*. He knew that was so at the time he took out this policy. I did not take out the policy.   *   *   *   After the fire, I found out about five days after the fire that Mrs. Farley was carrying $1,300 on the same property. *   *   *   I says: 'Ames, I have cleared up the mortgage of $4,500, and there is some back tax which was some time previous to this.'   *   *   *

"*Q*. How long before this policy was made?

"*A*. A couple of years.

"*Q*. What did you tell him about the taxes?

"*A*. I told him that there was some back taxes, and as soon as I could get around to that, I would clear them up.

"*Q*. Did he ever ask you anything more about taxes?

"*A*. I do not remember of ever seeing him after that.

"*Q*. So that the last time you had a talk with him you discussed the question of some back taxes that were unpaid?

"*A*. Yes, sir. ·

"*Q*. You told him you would soon pay them. You were a little short in paying the mortgage?

"*A*. Yes, sir.

"*Q*. You would clean them up soon?

"*A*. Yes, sir; something like that.

"*Q*. That was how many years? Give us your best estimate the years before you got this policy.

"*A*. I think two years.

"*Q*. Will you swear it was not four years before?

"*A*. I would not."

Mr. Ames testified:

"At the time I issued this policy, 'Exhibit 1,' I did not know there were any back taxes on the property. I did not know at that time the taxes for the years 1901, 1902, and 1903 had not been paid. I did not know at the time the policy was written that Mary L. Farley had, or claimed to have, any title upon that property and I did not know at the time of the fire or any time before the fire. I first found out after the German of Peoria had paid a claim to the Farley people of Flint when Mr. McLean was making an estimate of the building. I think I

found it out then. * * * I had some conversation with Mr. Kennedy about the mortgage and some taxes. He simply told me that the mortgage was all straightened out. He did not at that time tell me about some back taxes. He told me about the back taxes some time before that, when he was speaking of the taxes and the mortgage, and the amount due, etc., but at the time that he told me the taxes were paid, I simply congratulated him on the fact that everything was straightened up. I knew of the tax titles, not any back taxes. It might have been a year or four or five months before that he told me there were some back taxes. * * * It was about the time he paid this mortgage, or shortly after the mortgage was paid, he told me that the taxes and the mortgage and everything had been paid, but the year or to previous to that I know that there were some back taxes, whether 1901 or 1888, or 1890, I did not know."

The following special question was submitted to the jury, and answered by them in the affirmative, viz.:

"Do you find that Kennedy prior to the issuance of the policy in suit notified defendant's agent Ames that these taxes were delinquent and unpaid?"

The jury found a verdict in favor of plaintiff. Defendant made a motion to vacate and set aside the answer to the special question for the reasons that there was no competent evidence to warrant its submission, and the answer was against the weight of evidence. The motion was also for a new trial for other reasons. The court denied the motion, filing his reasons therefor, to which exceptions were taken and errors assigned thereon. Defendant brings the record to this court for review upon writ of error.

It is undisputed that Mr. Kennedy spoke to Mr. Ames about the taxes either two or three years before the issuance of the policy and said that he expected to pay them soon; and the serious conflict between them is as to whether he told Ames that he had paid them. This presented a question of fact for the jury, and by their answer to the special question they found that Kennedy did not tell Ames later on that he had paid them. We agree,

however, with the contention of defendant's counsel, that the facts as stated by plaintiff's husband were no notice to Ames of the condition of the title to the property on April 1, 1906, but, under the peculiar circumstances of this case, the question of notice to Mr. Ames is not very important. No application was made for this policy in writing or otherwise than by the general direction to keep the property insured. Plaintiff had never had a policy in defendant company before, and Mr. Ames transferred the policy to defendant company because he had lost the Atlas, in which it had been. Neither plaintiff nor her husband made any representations whatever for the purpose of procuring this insurance, and, under such circumstances, the company took the risk of undisclosed taxes when it issued the policy. *O'Brien* v. *Insurance Co.*, 52 Mich. 135 (17 N. W. 726); *Brunswick-Balke-Collender Co.* v. *Assurance Co.;* 142 Mich. 29 (105 N. W. 76).

The decree of sale for the taxes in question fixed the date of the sale for a day earlier than that prescribed by the statute and the sale was actually made upon the day fixed by the decree. The same court that entered the decree held, and we think correctly, in the proceedings for writ of assistance, that the decree and the sale made under it were void. Defendant had no right to be made a party to the proceedings. The proper parties were before the court and the decree must be held conclusive in this cause. *Spaulding* v. *O'Connor*, 119 Mich. 45 (77 N. W. 323); *Peninsular Sav. Bank* v. *Ward*, 118 Mich. 87 (76 N. W. 161, 79 N. W. 911); *Youngs* v. *Clark*, 120 Mich. 528 (79 N. W. 803); *Napper* v. *Fitzpatrick*, 139 Mich. 139 (102 N. W. 642); *Watts* v. *Bublitz*, 99 Mich. 586 (58 N. W. 465).

The failure to disclose these outstanding taxes did not avoid the policy nor did the liens created thereby. *Brunswick-Balke-Collender Co.* v. *Assurance Co.*, *supra; Alkan* v. *Insurance Co.*, 53 Wis. 136 (10 N. W. 91); *Phenix Insurance Co.* v. *Pickel*, 119 Ind. 155 (21 N. E. 546, 12 Am. St. Rep. 393); *Read* v. *Insurance*

*Co.*, 103 Iowa, 307 (72 N. W. 665, 64 Am. St. Rep. 180); *Hosford* v. *Insurance Co.*, 127 U. S. 404 (8 Sup. Ct. 1199 ); *Baley* v. *Insurance Co.*, 80 N. Y. 21 (36 Am. Rep. 570 ).

The seventh and eighth assignments of error are to the effect that the court erred in receiving the proofs of loss in evidence as competent for all purposes, and in refusing defendant's request for an instruction that they were not competent as tending " to prove the ownership of the property or the fact of loss or the amount of the loss." We think the court erred in refusing this request, but that such error could not have prejudiced the defendant. The plaintiff was not sworn upon the trial, and it is apparent from the record that she had very little to do with the matter. Her husband and Mr. McLean, both of them being building contractors of long experience, testified fully as to the amount of the loss, and one witness testified for defendant. The jury found in accordance with the testimony of plaintiff's witnesses and against the testimony of defendant's witness, and it would be unreasonable to hold that the statement of loss in the formal proofs of loss could have affected their verdict. Plaintiff's husband testified, against objection that the evidence was incompetent, that she was the owner of the property in question, and had been for 25 years. Defendant assigns error upon the admission of this testimony, citing, in support of the assignment, *Hiram Jennison* v. *Haire*, 29 Mich. 207, and *Luman Jennison* v. *Haire*, 29 Mich. 220. In those cases an objection was sustained to the following question:

"State whether all the logs were not subject to a lien of the Bendon Lumbering Company for the stumpage, and whether that company was not the owner of the lands from which the timber was cut by you."

The exclusion of the testimony was sustained by this court upon the ground that so much of the proposed question as required the witness to swear that the company

owned the lands was subject to the objection of incompetency.   See *Jennison* v. *Haire, supra*, at page 215.

Defendant's agent testified that he had been in the real estate business for 20 years, and had been familiar with this particular property for about the same length of time and had carried insurance on it ever since he had been in the insurance business, for 12 or 13 years.   Defendant put in records showing that the property was assessed to plaintiff, had been sold by the State for delinquent taxes under a court decree, and deeded by the auditor general to Mrs. Farley.   The heart of the defense was that Mrs. Kennedy had been the owner of the property, but that her title had been divested by the tax proceedings, of which it had no notice, and that thereby her policy was avoided.   Under the circumstances disclosed by this record, we think there can be no doubt that plaintiff was the owner of the property, and it would be a reproach to the courts to reverse the case for the error in admitting the testimony of plaintiff's husband.

We have considered the other errors assigned, but do not find any of them so prejudicial as to warrant a reversal of the judgment.

The judgment is affirmed.

HOOKER, MOORE, MCALVAY, and BROOKE, JJ., concurred.