BARRETT v. CONNECTICUT FIRE INS. CO.

1. INSURANCE—FIRE INSURANCE—FRAUD—INTENT—FORFEITURE.
   Proof of fraudulent intent is necessary in order to create a forfeiture of a Michigan standard fire insurance policy, under the clause of the policy providing that in "case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof," the entire policy shall be void.[1]

2. SAME—FALSE SWEARING—INTENT—QUESTION FOR JURY.
   In an action on a fire insurance policy, claimed by the insurer to be void under its terms by reason of the fraud and false swearing of the insured, the intent of the false swearing and false representation was properly a question for the jury.

3. APPEAL AND ERROR—NEW TRIAL—WEIGHT OF EVIDENCE—SAVING QUESTION FOR REVIEW.
   Where no error was assigned upon the refusal of the court to grant a new trial because the verdict was against the weight of the evidence, that question is not open to review in this court.

4. INSURANCE—VALUE OF DESTROYED PROPERTY—EVIDENCE.
   The question of the cash value of property destroyed or injured being material, it was not error to permit plaintiff to testify to what she was informed a piano was worth when she bought it.

5. SAME—EVIDENCE—IMMATERIALITY.
   Testimony as to what prompted a witness to inquire into plaintiff's history was immaterial and was properly excluded.

6. APPEAL AND ERROR — INSURANCE — FRAUD — INSTRUCTIONS — WEIGHT OF EVIDENCE—PRESUMPTIONS.
   In an action on a fire insurance policy, defended on the ground of fraud, where the evidence of plaintiff's fraud was very convincing, it cannot be presumed that erroneous

---

[1]On the effect of false swearing in proofs of loss in action for insurance, see note in 32 L. R. A. (N. S.) 453.

instruction that the fraud must be proved "by overwhelming evidence" was not prejudicial, although the court had previously given the proper rule.

Error to Genesee; Barton, J., presiding. Submitted January 19, 1917. (Docket No. 48.) Decided March 29, 1917.

Assumpsit by Stella Barrett against the Connecticut Fire Insurance Company upon a policy of insurance. Judgment for plaintiff. Defendant brings error. Reversed.

*Clinton Roberts,* for appellant.

*Marshall M. Frisbie* and *James S. Parker,* for appellee.

After a fire which destroyed certain insured property plaintiff made, verified, and filed with defendant, whose policy she held, proofs of loss. She said therein that by a fire occurring August 25, 1915, she sustained loss and damage "as stated in the papers hereto attached, marked Exhibits A and B"; that the property described in Exhibit A—

"belonged exclusively to this deponent, and to no other person or persons, and no other person had any interest therein; that the property described in Exhibit B this deponent says she had at the time of said fire an equity in having purchased said property on a contract from the Kobacker Furniture Company, of the city of Flint, Mich., and that part of the money due under said contract to said Kobacker Furniture Company was at the time of said fire unpaid; * * * that Exhibits A and B, attached hereto, are a correct and full inventory of the property destroyed in said fire, with the costs of each article."

There was no other insurance. The footing of Exhibit A is $1,299.90, and of Exhibit B is $308.10. The policy indemnified plaintiff to the amount of $1,500.

Listed in Exhibit A are some household furniture, dishes, clothing, pictures, a trunk, and a piano; the piano being valued therein at $350. In fact, the piano had been purchased by her upon a contract, and she had paid $5 of the purchase price, which was $165. The title thereto was reserved by the vendor, Grinnell Bros. The manager of Grinnell Bros. at Flint testified that after the fire plaintiff told him she had valued the piano in her proofs of loss at $350, and asked him to state to any one making the inquiry that $350 was its value, which he declined to promise to do. Upon cross-examination he testified, in part:

"*Q.* Did Mrs. Barrett at the time she was discussing the value of the piano with you call your attention to the fact she had been informed by you or your agents the piano was actually worth $350 and you had made a special price to her on that piano? * * *

"*A.* In discussing the price of the piano now—I told her probably the piano now would be worth $350.

"*Q.* This piano had been a used piano?

"*A.* Had been a used piano.

"*Q.* You were having a sale on at the time she bought it, weren't you?

"*A.* Yes.

"*Q.* You made it as a special discount to your trade at the time she bought this piano a certain amount of its value in order to induce a purchase?

"*A.* It was the price we had on the piano during this time."

On redirect examination he testified:

"*Q.* Mr. Baird, at the time the price of this piano was spoken of, was at the time of the fire, was it not?

"*A.* Yes, sir.

"*Q.* That is the time you have reference to in your testimony?

"*A.* You mean the price new?

"*Q.* Yes.

"*Q.* State whether or not that was when Mrs. Barrett came to you after the fire.

"*A.* Yes.

"*Q.* You may state whether or not, Mr. Baird, that piano was sold to Mrs. Barrett as a secondhand piano when it was sold.

"*A.* It was."

In exhibit B are items of household furniture. The goods purchased from Kobacker Furniture Company cost—were priced and sold to her for $307.60, the vendors retaining title. She had paid $75 cash, and had returned and been credited $18.50 for a rug.

No written application for the policy was made. The policy was issued by the local agent of defendant at Flint, who made no inquiry concerning the title to the property insured. He stated and was paid the premium for a policy of $1,500. Testimony for defendant tended to prove that but few of the goods were actually destroyed, and that the loss did not exceed $300. Proofs of loss were furnished October 18, 1915, payment was refused by defendant, and this suit was begun in December, 1915. With its plea defendant gave notice of special defenses, based upon provisions of the policy of insurance. Among them was the provision that the policy should be void, unless otherwise provided by indorsed or attached agreement, if the interest of the assured "be other than unconditional and sole ownership," and one that—

"this entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact * * * if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

Upon the trial, the testimony being concluded, defendant moved for a directed verdict, based upon the testimony and the clause of the policy last above referred to, contending that fraud had been established and false swearing, as matter of law. The court instructed the jury in part as follows:

"It appears from this policy that it contains this provision:

" 'This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.'

"Mark the language. The clause concerning the insurance or the property insured, or the loss of the value of the property, required the insured to make truthful representations of the fact concerning the entire subject of insurance before and at the time of the fire, and also statements as to the property and its value at any time since the fire, and also by means of her written and sworn proofs of loss, and the evidence here upon the witness stand requires all these statements and representations to be truthfully made. By the terms of the policy any false or fraudulent statements affecting this insurance renders the policy void.

"Now, gentlemen, I charge you that the burden of establishing fraud rests upon the defendant company. Such fraud on the part of the plaintiff must be established by a preponderance of the evidence in determining whether the plaintiff has been guilty of fraud as charged. You are to consider all the proofs and circumstances relating to the making and presenting the said proofs of loss and to all other circumstances surrounding the condition of the property as appears from the evidence. I further charge you that fraud need not be established by direct proof. In a great majority of cases where fraud exists, it becomes impossible to bring witnesses that can give direct proof that fraud exists. For this reason it may be established by circumstances that convince you that fraud was actually intended and committed by the plaintiff. I charge you that if you find any of the values specified in the proofs of loss furnished to the defendant company were too high, and that the plaintiff caused or permitted the furnishing of such proofs of a greater amount for any such article than she knew it to be

worth with the intention or expectation of getting a
greater amount for the article than she knew she
ought to have in fairness to the defendant, then she
was guilty of such fraudulent conduct as would make
void the policy, and result in the forfeiture of any
claim that she might otherwise have had.  I further
charge you in this connection that any statement con-
cerning the subject of insurance or concerning the
amount or value of the property insured or destroyed,
or any statement as to its condition or value in her
written proof of loss, or here on the witness stand,
or her statements on the witness stand, and were made
by her fraudulently and with the intention of fraud
that would render the policy void."

Further on the instruction was:

"There are two important questions for you to de-
cide: that is, *first,* was there a fraud committed in the
making of these proofs or in the representations made
by her in those proofs as to the value of this piano
or any article?  Did she intentionally, mark you the
language, gentlemen, did she misrepresent the value
of any piece of property included within this insur-
ance?  Did she make these misrepresentations with
intent to defraud the company of any amount?  Now,
gentlemen, there is this fact for you to find.  If you
find she did, you will go no further, and your verdict
should be no cause of action.  If you find there was
no intention of fraud perpetrated, then you will con-
sider the proofs as to the value of loss; in other words,
the amount of the loss she suffered by virtue of this
fire, and assess her damages fairly and reasonably,
finding it alone from the proofs and the evidence in
this case, and from no other source."

And at the very conclusion of the charge the court
said:

"If you find the plaintiff has proven her case by
that preponderance of the evidence which I have de-
fined, you will find a verdict in her favor not to exceed
the sum or amount claimed, $1,079.  If, on the other
hand, the company, the defendant company, has proven
by overwhelming evidence the fraud or intention of
fraud, then you will find the verdict in their favor,

and the form of the verdict would be no cause of action."

The jury returned a verdict for plaintiff for $965.58, no interest being claimed, or included; and judgment was entered on the verdict. A motion for a new trial, based upon the grounds that the verdict was against the weight of evidence, the charge of the court, and was excessive, and that a verdict should have been directed, was overruled.

In this court, defendant complains of the charge, complains that a verdict was not directed, complains of the admission of plaintiff's testimony that *she was informed* the piano was worth $350.

OSTRANDER, J. (*after stating the facts*). The Michigan standard policy limits the liability of the insurer to the actual cash value of the property at the time loss or damage occurs, in no event to exceed what it would then cost the insured to repair or replace the same with material of like kind and quality. It requires, in case a loss occurs, that the insured make a complete inventory, stating the quantity and cost of each article and amount claimed thereon, and within 60 days, unless the time is extended, a statement to the insurer, signed and sworn to by said insured, stating the cash value of each item, and the amount of loss thereon, and the interest of the insured, and of all others in the property. That plaintiff and whoever made up her proofs of loss had these provisions of her contract in mind is fairly established by the fact that she made an itemized statement, made two schedules, and as to the goods described in one of them stated that another had an interest in them. The apparent compliance with the provisions of her contract was particularly calculated to deceive. It is singular, if it is true, that she should have innocently listed the piano, upon which she had paid but $5, in

the other schedule, valuing it therein at more than double the sum she had agreed to pay for it.

With respect to the forfeiture clause of the policy which is relied upon by defendant, it was held in *Tiefenthal* v. *Insurance Co.*, 53 Mich. 306, 309, 310 (19 N. W. 9, 10), that it was properly construed in the following charge to a jury:

"That to defeat the plaintiff's right to recover upon the basis of false swearing, you must not only find that he swore to that which was false, but that he did so with fraudulent intent; and in weighing the question of false swearing with fraudulent intent, it is your duty to take into consideration the knowledge that the affiant, Mr. Tiefenthal, had of the facts that he is alleged to have sworn to, and it is for you to determine what statements in that paper or items he understood he was swearing to. If you should come to the conclusion from the evidence that any of the items that he understood he was swearing to were false, you will then inquire whether he made it with a fraudulent intent; that is to say, with an intent knowingly to get a greater price for an article than he knew it to be worth, or to get pay for articles that he knew he had not lost."

See, also, *Knop* v. *Insurance Co.*, 107 Mich. 323 (65 N. W. 228).

In *Brunswick-Balke-Collender Co.* v. *Assurance Co.*, 142 Mich. 29, 36 (105 N. W. 76, 79), the following rule from 1 Clement on Fire Insurance (p. 273) is cited with approval:

"Fraud or false swearing implies something more than mistake of fact or honest misstatements on part of assured. They may consist in knowingly and intentionally stating upon oath what is not true, or a statement of a fact as true which the party does not know to be true, and which he has no reasonable ground of believing to be true."

And it was said by this court:

"We think that the fraud referred to in this clause

must be held to be actual fraud, and that the same rule applies which, in case the charge is false swearing, as we have heretofore held, requires proof of a fraudulent intent."

This rule and view of the law requires usually that the question of the intent with which, as here, false swearing is done and false representation is made be inquired into by the jury, and it cannot be held error for the court in this case to submit the question to the jury. No error being assigned upon the refusal of the court to grant a new trial, the question of the weight of evidence upon this point is not before us.

As the question of the cash value of the property destroyed or injured was material, it was not error to permit plaintiff to testify to what she was informed the piano was worth when she bought it.

This disposes of the fifth, fourth, and second assignments of error. The third assignment is overruled, the question propounded to which an answer was refused calling for immaterial testimony. It was plainly not competent to lay before the jury what it was that prompted the witness to inquire into plaintiff's history.

The first assignment of error presents the serious question; more serious because the evidence of plaintiff's fraudulent intent is so convincing. It surely was an inadvertence when the court, after laying down proper rules for the guidance of the jury, concluded the charge by indicating that "the fraud or intention of fraud" with which plaintiff was charged must be proved "by overwhelming evidence," having immediately before then said that:

"If you find the plaintiff has proven her case by that preponderance of the evidence which I have defined, you will find a verdict in her favor. * * *"

Can it be assumed that no harm to defendant followed this erroneous, if inadvertent, instruction? I

feel constrained to conclude that, in view of the evidence and the verdict returned, such a presumption cannot be indulged, and that the case should be submitted to another jury.

The judgment is reversed, and a new trial granted.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.