HAWKEYE CASUALTY CO. v. HOLCOMB.

1. EQUITY—REVIEW DE NOVO.
   Chancery cases are considered *de novo* on appeal to the Supreme Court.

2. APPEAL AND ERROR—QUESTIONS REVIEWABLE—INSURANCE—FRAUD —AGENT.
   In automobile insurer's suit against insureds to cancel policy on ground of fraud and misrepresentation, claim made in plaintiff's brief, but not in bill of complaint, that its agency and the agency's solicitor aided and abetted perpetration of the alleged fraud *held*, untenable, in view of testimony presented.

3. INSURANCE—AUTOMOBILES—CANCELLATION OF POLICY—FRAUD—
BURDEN OF PROOF.

In automobile insurer's suit against insureds to cancel policy on ground of fraud and misrepresentation because of failure to disclose that another insurer had previously cancelled a policy issued to defendants on account of accident record, plaintiff failed to sustain its burden of proof of fraud on part of defendants where they did not make or sign written application for the policy and it contained no space or provision requiring their signature and policy was issued and countersigned by duly-authorized agent who knew of previous cancellation and the reason therefor.

4. SAME—AUTOMOBILES—BLANK SPACES—AUTHORITY OF AGENT.

Purchaser of automobile insurance who accepts policy from agent as countersigned and delivered with certain blank spaces in warranty provisions unfilled is not required to communicate with insurer to ascertain if agent had authority to countersign and issue policy in the form delivered, especially where policy contains clause that portions of form not filled in were omitted.

5. CANCELLATION OF INSTRUMENTS—FRAUD—BURDEN OF PROOF.

In insurer's suit to cancel an automobile insurance policy because of claimed fraud on part of defendants in obtaining issuance of policy, plaintiff has burden of proving fraud by a preponderance of the evidence.

6. SAME—INSURANCE POLICY—FRAUD—EVIDENCE.

In insurer's suit to cancel an automobile insurance policy because of claimed fraud on part of defendants in obtaining issuance of policy, Supreme Court finds no evidence indicating misrepresentation or fraud by defendants in obtaining policy.

7. INSURANCE—AGENT'S KNOWLEDGE IMPUTED TO INSURER—AU-
THORITY.

An insurance agent's knowledge of insured's accident record and previous cancellation of automobile insurance policy by another insurer must be considered knowledge of insurer where it pertains to a matter upon which an agent may act within the scope of his authority.

8. SAME—IMPUTATION OF AGENT'S KNOWLEDGE TO PRINCIPAL.

The general rule of insurance law is that the knowledge of, or notice to, an insurance agent as to a matter within the scope of his authority, and which is acquired while the agent is acting within the scope of his authority, is chargeable to the insurer.

9. SAME—KNOWLEDGE OF AGENT OF MATERIAL MISREPRESENTATION
OR BREACH OF WARRANTY.

An insurer will not be permitted to take advantage of a material
misrepresentation or breach of warranty or condition or cause
of forfeiture rendering an insurance policy unenforceable at
its inception where knowledge of insurance agent relates to
such material misrepresentation or breach.

10. SAME—CANCELLATION OF POLICY—FRAUD—IMPUTED KNOWLEDGE
OF AGENT.

In insurer's suit against insured to cancel policy on ground of
fraud, where insurer did not allege or prove fraud on part of
its agent, the knowledge possessed by such agency was imput-
able to plaintiff.

11. SAME—IMPUTED KNOWLEDGE OF PREVIOUS CANCELLATION—ESTOP-
PEL—BREACH OF WARRANTY.

Insurer, having imputed knowledge of facts and circumstances
relating to previous cancellation of insureds' policy by an-
other insurer, is estopped from later claiming its policy was
void in its inception because of failure to disclose such cancel-
lation in blank space provided therefor in warranty provisions
of policy.

12. SAME—WAIVER OF CONDITIONS—AGENT—POLICY.

An insurer may be estopped or there may be waiver because
of its agent's knowledge or acts, notwithstanding provisions
in the policy as to the only manner in which conditions may
be waived.

13. SAME—GENERAL AGENTS—WAIVER—AUTHORITY.

The power of general agents of insurance companies to waive
policy conditions and causes of forfeiture is to be deter-
mined by the power they are held out by the companies to
the public as possessing, and not by written instruments of
appointment of which the public can have no knowledge.

14. SAME—GENERAL AGENTS—WAIVER—NOTICE—EXCESS OF AUTHOR-
ITY.

General insurance agents having apparent authority to issue
contracts of insurance without reference to the home office
are empowered, where the insured does not have or cannot
be deemed to have notice of any limitations of the power of
the agent in such respect, to waive conditions of forfeiture in
such policies; and their knowledge is the knowledge of the
insurer, notwithstanding any excess of actual authority.

15. SAME—AUTHORITY OF AGENT—WAIVER.

An insurance agent who is furnished with blank applications and policies, duly signed by insurer's officers, and who has been authorized to issue policies by simply signing his name as agent, to collect premiums, and to cancel policies without consulting the home office is a general agent whose knowledge or conduct may waive conditions of forfeiture in the policy irrespective of provisions as to waiver therein contained.

16. SAME—RECEIPT OF PREMIUM—CONSIDERATION—ESTOPPEL.

An insurance company which has received the premium of the insured under circumstances leading the insured to believe he is receiving, in consideration of the payment of such premium, a valid contract of insurance, is estopped from afterward repudiating the contract.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted June 3, 1942. (Docket No. 36, Calendar No. 42,016.) Decided September 8, 1942.

Bill by United Automobile Insurance Company, a Michigan corporation, against Dr. Clayton E. Holcomb and wife to cancel an automobile insurance policy. The Hawkeye Casualty Company of Iowa, an Iowa corporation, substituted as plaintiff. Bill dismissed. Plaintiff appeals. Affirmed.

*Linsey, Shivel, Phelps & Vander Wal* (*Knight & Panzer*, of counsel), for plaintiff.

*O'Hara & Montgomery* (*Benjamin W. Jayne* and *Earl W. Munshaw*, of counsel), for defendants.

STARR, J. In July, 1938, the United Automobile Insurance Company began the present chancery action to cancel an automobile insurance policy issued to defendants on April 2, 1938, on the ground that defendants had obtained such policy by fraud and

misrepresentation. In February, 1939, the United company, with the approval of the State commissioner of insurance, sold its property and assets to the Hawkeye Casualty Company, and an order was subsequently entered substituting the Hawkeye company as plaintiff in the present case. For sake of brevity we will refer to both the United company and the Hawkeye company as plaintiff.

The case was tried in October, 1941, and on February 25, 1942, the trial court entered decree denying plaintiff the relief sought and dismissing its bill of complaint. Plaintiff appeals from such decree. This being a chancery case, we consider the same *de novo*.

There is no serious conflict in the testimony. For a proper consideration of the questions of law presented on this appeal, the facts and circumstances relating to the issuance of the insurance policy in question must be narrated in some detail.

Defendant Holcomb and his wife were residents of Detroit. Plaintiff (United company) had its principal office in Grand Rapids. For several years prior to April 2, 1938, the Citizens Mutual Automobile Insurance Company of Howell, Michigan, had issued and carried automobile insurance policies for defendants. One Morton Hambly, an insurance solicitor for the Dorr W. Frisbee Agency of Detroit, had from year to year handled the renewal of defendants' policies in the Citizens Mutual company, the last renewal policy being issued February 11, 1938. During the preceding two years defendants had been involved in several automobile accidents resulting in claims for loss under their insurance policies. In the latter part of February or in March, 1938, Dr. Holcomb had another accident, and Solicitor Hambly was instructed to, and did, "pick

up'' the defendants' policy for cancellation. Hambly testified:

"*Q*. And then what happened after that?

"*A*. In the latter part of February, or the first part of March, he (Dr. Holcomb) had another accident out near Drayton Plains.    *    *    *

"And Mr. Woodham (vice-president of the Citizens Mutual company) considered that it would be advisable that we pick up the policy and cancel same, which I did.

"*Q*. Was the policy cancelled?

"*A*. I picked it up and cancelled it the latter part of March (1938).    *    *    *

"*Q*. When you picked up Dr. Holcomb's policy with the Citizens Mutual, did you tell him why they were cancelling the policy?

"*A*. Well, we talked about it, and I said they didn't want to stay in the risk any more, and the only thing we could do was to pick up the policy.

"*Q*. Well, did you tell him why they didn't want to stay on the risk?    *    *    *

"*A*. I told him that the company did not want to stay in the risk any longer, after the accident out in Drayton Plains, and the only thing I could do was to pick up the policy, or else they would mail him a registered cancellation notice.    *    *    *

"*Q*. And the policy with the Citizens Mutual Automobile Insurance Company was actually cancelled?

"*A*. Yes, it was actually cancelled.

"*Q*. Because of the frequency of accidents?

"*A*. Yes, sir."

In March, 1938, plaintiff appointed the Frisbee insurance agency as its agent with authority to countersign and issue its automobile policies, and it furnished such agency with policy forms. The formal agency contract between plaintiff and the Frisbee agency was not signed until April 9, 1938,

but plaintiff admits that the Frisbee agency was authorized to act as its agent and to countersign and issue its policies, including its policy to defendants, prior to that date.  On April 2, 1938, the Frisbee agency countersigned and issued to defendants the insurance policy of plaintiff company involved in this suit.  Between the 10th and 15th of April, 1938, Solicitor Hambly of the Frisbee agency delivered such policy to defendants who accepted the same and paid the premium therefor to the agency.  Defendants did not make written application for such policy and were not required to sign either an application or the policy.  Solicitor Hambly testified:

"*Q*.  Well, after Dr. Holcomb's policy in the Citizens Mutual was cancelled, what if anything did you do about placing his insurance?

"*A*.  I talked to Mr. Frisbee, Dorr Frisbee, regarding same, and we kind of felt that probably he just had a streak of bad luck, and that we would place same with the Builders & Manufacturers of Chicago.   *   *   *

"*Q*.  Well, was the policy on Dr. Holcomb's automobile written with the Builders & Manufacturers Insurance Company?

"*A*.  No.  At that time there was a question of the insolvency of the Builders & Manufacturers Insurance Company that came up, and the policy was never written in the Builders & Manufacturers.   *   *   *

"*Q*.  Well, was a policy on Dr. Holcomb's LaSalle automobile written with another automobile company?

"*A*.  Yes, in the early part of April, 1938, with the United Automobile Insurance Company (plaintiff) of Grand Rapids.   *   *   *

"*Q*.  Very well.  Was a policy of automobile insurance, covering Dr. Holcomb's LaSalle automobile, actually written?

"*A.* I received the policy and delivered it (to defendants) in April, to the best of my knowledge. * * *

"I imagine it would be around between the 10th and 15th of the month of April, 1938. * * *

"*Q.* * * * Did you look at the policy and read it over before you delivered it?

"*A.* No, I did not. * * *

"*Q.* Did you ever ask Dr. Holcomb to sign an application to the United (plaintiff)?

"*A.* No.

"*Q.* Did you read him the policy?

"*A.* No. * * *

"*Q.* And did you inform Mr. Frisbee,—or, did you discuss the cancellation of the policy Dr. Holcomb had in the Citizens Mutual?

"*A.* I did.

"*Q.* What conversation did you have with him, other than that, relative to Dr. Holcomb's new policy?

"*A.* We discussed the cancellation of it, and kind of felt that Dr. Holcomb has a good practice, and he seems to be a very responsible doctor, and it may have been just a question of a little hard luck or the bad breaks of about two or three in a row that happened, and we considered he was still a good risk; nothing more than that."

Mr. Frisbee of the Frisbee agency testified, in part:

"*Q.* And did your agency write a policy with the United (plaintiff), for Dr. Holcomb and his wife?

"*A.* We did. * * *

"*Q.* Well, at the time that this policy in question was written, were you familiar with the fact that on the face of the policy there was a schedule of warranties?

"*A.* Well, that was so long ago that I can't be sure, but I assume that I at least looked at the

United policy before we issued them.   There was a great state of confusion here at the time, due to the failure of one of the companies which we had previously represented.   *   *   *

"*Q.*   The reason you took on the United, as agent for it, was because the Builders & Manufacturers (Casualty Co.) were going out of business, is that right?

"*A.*   That is right.   *   *   *

"*Q.*   Did you know that Dr. Holcomb had been cancelled out of the Citizens Mutual because of the frequency of accidents?

"*A.*   I knew that he had been or was to be cancelled because of an unsatisfactory experience."

On May 14, 1938, the Frisbee agency wrote plaintiff reporting the issuance of five policies, including the policy issued on April 2, 1938, to defendants. Frisbee testified that the delay in reporting the issuance of such policies was due to confusion in the Frisbee agency as a result of the failure of the Builders & Manufacturers Casualty Company, which it represented.   Plaintiff's vice-president testified that the Frisbee agency's letter was received on May 17th and that within a few days thereafter plaintiff verified information previously furnished by an underwriters service association that the Citizens Mutual company had cancelled defendants' policy because of their record of accidents and losses.

On June 4, 1938, plaintiff's attorneys wrote defendants stating, in effect, that defendants had obtained the policy in question by fraud and in violation of a warranty provision thereof by failing to disclose that the Citizens Mutual company had cancelled its policy.   Plaintiff's attorneys inclosed with their letter of June 4th check payable to defendants for $26, that being the full amount of the premium

paid for the policy. On June 23, 1938, Dr. Holcomb wrote plaintiff as follows:

"I am returning the check for $26 dated June 4th, which you sent to me, together with a letter from your attorneys, claiming policy No. 8205-M, issued by your company, is void.

"The policy is not void. If you wish to cancel it, it is your privilege to do so, but until you do cancel it, the policy is in full force and effect.

"Morton D. Hambly, who delivered the policy to me, and Dorr W. Frisbee, your agents, were acquainted with all of the facts in connection with the issuance of this policy and all that is necessary for you to do to get these facts is to ask them. *They knew my policy with the Citizens Mutual Insurance Company was about to be cancelled and it was at their suggestion that I took out this policy in your company.*

"I never have made any representations to your company, or its agents, either verbally or in writing, to the effect that any company had cancelled or declined to issue any insurance for me, nor have I made any other representations to you, or your agents, either verbally or in writing, about any fact or circumstance concerning this insurance."

On about June 9, 1938, defendants sent plaintiff written report of an automobile accident by Dr. Holcomb on May 13, 1938. On July 9, 1938, plaintiff began the present suit to cancel defendants' policy as of the date of its issuance.

The questions of law presented on this appeal arise under the following provisions of plaintiff's policy, issued to defendants on April 2, 1938:

"WARRANTIES    *    *    *

"9. No company has cancelled or declined to issue any automobile insurance for the named assured during the past three years except as follows
 (left blank)        *    *    *

"CONDITIONS, LIMITATIONS, AND
AGREEMENTS  *   *   *

"Q—Misrepresentation and Fraud

"This entire policy shall be void if the assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or in case of any fraud, attempted fraud, or false swearing by the assured touching any matters relating to this insurance or the subject thereof, whether before or after a loss or accident.  *   *   *

"Y—Statutory Provisions  *   *   *

"This policy is issued and accepted subject to the conditions, limitations, agreements and warranties set forth herein or indorsed hereon, and upon acceptance of this policy the assured agrees that its terms embody all agreements then existing between himself and the company or any of its agents relating to the insurance described herein, and no officer, agent or other representative of the company shall have power to waive any of the terms of this policy unless such waiver be written upon or attached hereto, and signed by a duly authorized agent of this company; nor shall the knowledge possessed by any agent or by any other person, be held to effect a waiver or change in any part of this contract.  This policy shall be void in event of violation by the assured of any agreement, condition or breach of any warranty contained herein or in any rider now or hereafter attached hereto."

The policy also contained the following provision which appeared immediately preceding the warranties:

"(Portions of form not filled in have been omitted)"

The blank space appearing in the ninth warranty above quoted was not filled in.  Certain of the blank

spaces appearing in the fifth and eighth warranties were not filled in.

Plaintiff contends that the policy in question was void from its inception because of defendants' fraud in obtaining its issuance. Plaintiff also contends that defendants read, or are presumed to have read, the policy, including the ninth warranty above quoted; that their acceptance and retention of the policy without disclosure of the previous cancellation by the Citizens Mutual company constituted a negative answer in such warranty; and that such negative answer amounted to a false warranty which voided the policy under provisions Q and Y above quoted. Plaintiff bases its contentions on the erroneous premise that the Frisbee agency's knowledge of defendants' accident record and of the Citizens Mutual company's cancellation of its policy was not plaintiff's knowledge and, therefore, it was not estopped from later claiming that its policy was void from the time of issue.

In its brief, but not in its bill of complaint, plaintiff charges the Frisbee agency and Solicitor Hambly with aiding and abetting defendants in the perpetration of the alleged fraud. Such charge against the Frisbee agency and Solicitor Hambly cannot, in view of the testimony presented, be given serious consideration.

Defendants did not make or sign written application for such policy. The policy itself contained no space nor provision requiring their signature. Plaintiff admits that the Frisbee agency had authority to countersign and issue the policy. It may reasonably be presumed that, when Solicitor Hambly picked up (in March, 1938) defendants' Citizens Mutual policy for cancellation, he and Dr. Holcomb discussed the matter of obtaining other insurance. This is rather affirmatively shown by the fact that

in April, 1938, Frisbee, after talking with Hambly and without interviewing Dr. Holcomb, issued the policy in question to defendants. There is no testimony indicating that defendants made any misrepresentations for the purpose of inducing plaintiff or the Frisbee agency to issue such policy. There could have been no misrepresentations by defendants to the Frisbee agency as to the cancellation of the Citizens Mutual policy, because both the Frisbee agency and its solicitor, Hambly, had full information regarding such cancellation and the reason therefor. We agree with the trial judge who stated in his opinion:

"While the plaintiff has alleged fraud, they have failed to sustain the burden. There nowhere appears any evidence upon which to hang any fraudulent conduct on the part of the defendants. So far as they are concerned, it only appears that they relied upon the Frisbee agency to issue another policy in place of the one which has been cancelled, and when this policy was delivered to them, they paid the premium thereon. They dealt with plaintiff's agent, who knew all that defendants knew. * * *

"The Frisbee agency was a general or recording agent of the plaintiff, with full authority to issue and countersign its policies. So far as this plaintiff here is concerned, nothing that defendant said or knowledge that he had induced the plaintiff to issue the policy. The most they can claim is that failure to answer (the blank space in the ninth warranty) was an answer in the negative; * * * but this did not influence the plaintiff."

Having made no written application nor any misrepresentations to induce the Frisbee agency to issue the policy, defendants were justified in accepting it as countersigned and delivered to them and in

assuming that the policy was in form satisfactory to plaintiff. It was certainly not incumbent upon defendants to go to or communicate with plaintiff company's home office to ascertain if the Frisbee agency had authority to countersign and issue the policy *in the form* in which it was delivered to them. Furthermore, under the above-quoted provision of the policy that "portions of form not filled in have been omitted," defendants were entitled to assume that the blank spaces in warranties 5, 8, and 9 were omitted.

The burden was upon plaintiff, who claimed fraud on the part of defendants in obtaining the issuance of such policy, to prove such fraud by a preponderance of the evidence. *Jacobs* v. *Queen Insurance Company of America,* 195 Mich. 18; *Alma State Savings Bank* v. *Springfield Fire & Marine Ins. Co.,* 268 Mich. 631; *Barrett* v. *Connecticut Fire Ins. Co.,* 195 Mich. 209. We find no evidence indicating misrepresentation or fraud by defendants in obtaining the policy.

The Frisbee agency's knowledge of defendants' accident record and of the previous cancellation by the Citizens Mutual company must be considered as the knowledge of plaintiff company. In 29 Am. Jur. p. 612, § 808, it is stated:

"The general rule of agency that the principal is chargeable with, and is bound by, the knowledge of or notice to his agent received while the agent is acting within the scope of his authority, and which is in reference to a matter over which his authority extends, is fully applicable to agents of insurance companies. The general rule of insurance law is that the knowledge of, or notice to, an insurance agent as to a matter within the scope of his authority, and which is acquired while the agent is acting within the scope of his authority, is chargeable to

the insurer.  Where such knowledge of an insurance agent relates to a material misrepresentation or breach of warranty or condition which would otherwise render the policy unenforceable at its inception, the insurer issuing the policy will not be permitted to take advantage of such breach, or cause of forfeiture.''

As plaintiff did not allege or prove fraud on the part of the Frisbee agency, the knowledge of the agency was imputable to plaintiff.  *Rorick* v. *State Mutual Rodded Fire Insurance Co.,* 263 Mich. 169; *Blake* v. *Farmers' Mutual Lightning Protected Fire Insurance Company of Michigan,* 194 Mich. 589; *Jacobs* v. *Queen Insurance Co.,* 183 Mich. 512; *Improved-Match Company* v. *Michigan Mutual Fire Insurance Co.,* 122 Mich. 256; *Michigan Shingle Company* v. *State Investment & Insurance Company of San Francisco,* 94 Mich. 389 (22 L. R. A. 319); *Russell* v. *Detroit Mutual Fire Insurance Co.,* 80 Mich. 407; 26 C. J. p. 296, § 368.

Plaintiff, having imputed knowledge of the facts and circumstances relating to the cancellation of defendants' policy by the Citizens Mutual company, is estopped from later claiming that its policy was void in its inception because of the failure to disclose such cancellation in the blank space in the ninth warranty.  *Coverdill* v. *Northern Insurance Company of New York,* 243 Mich. 395; *Wilds* v. *Fidelity & Deposit Co.,* 239 Mich. 396; *Crossman* v. *American Insurance Company of Newark, N. J.,* 198 Mich. 304 (L. R. A. 1918 A, 390); *Blake* v. *Farmers' Mutual Lightning Protected Fire Insurance Company of Michigan, supra; Improved-Match Company* v. *Michigan Mutual Fire Insurance Co., supra; Beebe* v. *Ohio Farmers' Insurance Company,* 93 Mich. 514 (18 L. R. A. 481, 32 Am. St. Rep. 519).

In 3 Joyce on the Law of Insurance (2d Ed.), p. 3243, § 1973, it is stated:

"Assurer may also be estopped or there may be a waiver by reason of its agent's knowledge or acts, notwithstanding provisions in the policy as to the only manner in which conditions may be waived by the agent."

"The power of general agents of insurance companies to waive policy conditions and causes of forfeiture is to be determined by the power they are held out by the companies to the public as possessing, and not by written instruments of appointment of which the public can have no knowledge. General insurance agents having apparent authority to issue contracts of insurance without reference to the home office are empowered, where the insured does not have or cannot be deemed to have notice of any limitations of the power of the agent in such respect, to waive conditions of forfeiture in such policies; and their knowledge is the knowledge of the insurer, notwithstanding any excess of actual authority. An insurance agent who is furnished with blank applications and with policies, duly signed by the company's officers, and has been authorized to issue policies by simply signing his name as an agent, to collect premiums, and to cancel policies without consulting the home office, is within such rule." 29 Am. Jur. p. 628, § 825.

In *Richards* v. *Washington Fire & Marine Ins. Co.*, 60 Mich. 420, 427, this court said:

"Where a local agent has authority to issue policies himself, the applicant for insurance, in the absence of fraud, may generally deal with him as he would with the officers of the insurance company, and rely on his conduct as he could on theirs."

In *Suschnick* v. *Underwriters Casualty Co.*, 211 Wis. 474, 481 (248 N. W. 477), a situation somewhat

similar to that in the instant case was considered. The court there said:

"As both Young and Harding are, in law, held to be the agents of the Underwriters Casualty Company, the knowledge which they had as to the cancellation of former policies issued to Suschnick, and the payment of losses thereunder, is, in law, considered to be the knowledge of the Underwriters Casualty Company, and any fact, which breached a condition of the policy issued by the insurer to Suschnick, and which was known to Young or Harding when the policy was issued or the application was made, does not void that policy or defeat a recovery thereon in the event of loss.   § 209.08 (1), Stats.; *Newburg* v. *United States F. & G. Co.*, 207 Wis. 344 (241 N. W. 372); *Day* v. *Hustisford Farmers Mutual Ins. Co.*, 192 Wis. 160 (212 N. W. 301); *Olson* v. *Herman Farmers Mutual Ins. Co.*, 187 Wis. 15 (203 N. W. 743)."

In *Coverdill* v. *Northern Insurance Company of New York, supra*, we said, p. 398:

"An insurance company which has received the premium of the insured under circumstances leading the insured to believe he is receiving, in consideration of the payment of such premium, a valid contract of insurance, is estopped from afterward repudiating the contract."

Plaintiff cites *Taylor* v. *American Liability Co.* (C. C. A.), 48 Fed. (2d) 592, and other cases as authorities for its contention that defendants' acceptance and retention of the policy, without the blank space in the ninth warranty having been filled in, constituted fraud and a breach of such warranty, and voided the policy.   In such cases the applications for insurance contained false statements or misrepresentations which induced the issuance of the policies

in question. Such decisions are readily distinguishable from the present case in which defendants made no written application nor misrepresentations inducing the issuance of their policy, and in which plaintiff's agent had full knowledge of all the facts and circumstances and had authority to countersign and issue the policy.

In the case before us there is no proof of fraud by defendants in obtaining the issuance of the policy in question. As the knowledge of the Frisbee agency regarding defendants' accident record and of the cancellation of the Citizens Mutual company's policy was imputable to plaintiff, it is therefore estopped from claiming fraud or breach of warranty by defendants.

The decree of the trial court is affirmed, with costs to defendants.

CHANDLER, C. J., and BOYLES, NORTH, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.