## CUMBERLAND BONE COMPANY *vs.* ANDES INSURANCE COMPANY.

*Insurable interest—what is.*

The bargainee of goods who has advanced the price thereof to the seller, when the seller has agreed to store them free of expense to him, and deliver them as wanted, and to procure insurance on them to protect his advances, and does so in good faith, in the name of the bargainee, making known to the agent of the insurance company the fact of the advances, and the object of the policy, has an insurable interest in the goods, so that a policy in his name may be valid and binding, so far as that point is concerned, notwithstanding the goods may not have been separated from other stock belonging to the seller, of the same kind, or weighed out, formally delivered, and accepted by the bargainee.

ON REPORT.

ASSUMPSIT, to recover for a loss by fire of a quantity of fish scrap alleged to be the property of the plaintiffs, stored in the building at Boothbay, Maine, known as the Atlantic Oil Company's Works, upon which the defendants issued a policy insuring it to the amount of two thousand dollars, from the eleventh day of March to the first day of June, 1872. The fire occurred April 13, 1872. The Atlantic Oil Company's Works were managed

and mostly owned by Luther Maddox of Boothbay, who had agreed early in 1872, to deliver a quantity of fish scrap there made to the plaintiffs, in consideration of which, money and machinery to the amount of two thousand dollars were advanced to him by the Cumberland Bone Company, and he was to ship the scrap as wanted, storing it and keeping it insured in the meantime for the benefit of, and free from expense to the plaintiffs. Accordingly he procured the policy upon which this suit is brought to be issued in the plaintiffs' name, stating the facts to the insurance agent at Bath, who delivered it to him, and he obtained another policy, in another company, upon his own interest at the same time. There never was any weighing or separation of any of the scrap destroyed, nor any formal delivery of it to the plaintiffs.

A default was entered for the full amount claimed, being two thousand dollars and interest from the time the loss was payable; to be taken off if, on all the testimony, this court should come to the conclusion that a jury would not be authorized to find that the plaintiffs had an insurable interest under the policy.

*Strout & Holmes* for the plaintiffs.

As between the parties, no delivery was necessary. 1 Parsons on Con., 529; *Waldron* v. *Chase*, 37 Maine, 414; *Vining* v. *Gilbreth*, 39 Maine, 496; *Whitehouse* v. *Frost*, 12 East., 613.

Nor does it make any difference that the stock was to be ground by Maddox before shipment. 37 Maine, 414; *Damon* v. *Osborne*, 1 Pick., 476; *Riddle* v. *Varnum*, 20 Pick., 280.

Any legal or equitable interest under an executory contract constitutes an insurable interest. *Columbian Insurance Co.,* v. *Lawrence*, 2 Peters, 26; *Oliver* v. *Greene*, 3 Mass., 133; *Bartlett* v. *Walter*, 13 Mass., 267. One has an insurable interest in any property by the existence of which he enjoys a benefit or advantage, and by the destruction of which he will suffer a loss, whether he has any title to or lien upon it or not. *Eastern Railroad Company* v. *Relief Fire Insurance Company*, 98 Mass., 420; *Insurance Company* v. *Chase*, 5 Wallace, 513; *Wilson* v. *Jones*, Law Rep., 3 Exch., 150; 3 Kent's Com.,* 376.

The interest need not be specified.   5 Wallace, 513 ; *Kenny* v. *Clarkson*, 1 Johns., 385 ; *Carruthers* v. *Sheddon*, 6 Taunton, 14.

*Howard & Cleaves*, and *C. W. Larrabee* for the defendants.

The case resolves itself into this : the plaintiffs have an account against Maddox for advances under a contract to furnish them a quantity of fish guano.   The guano has not been furnished ; but Maddox lost by fire a quantity of fish scrap that he intended to prepare for the plaintiffs under their agreement.   The plaintiffs might accept or reject it, as only perfect fish were contracted for, and no agent of the Bone Company had ever inspected the scrap to see if it was suitable and would be received. The plaintiffs had no more interest in this scrap than if it had been "afloat in the shape of porgies."

No action upon a policy can be maintained unless the insured had an interest in the property at the time of its loss.   *Folsom* v. *The Merchants' Insurance Company*, 38 Maine, 414 ; *Sawyer* v. *Mayhew*, 51 Maine, 399 ; *French* v. *Rogers*, 16 N. H., 177.

It must be a legally recognizable interest in the subject insured. May on Insurance, § 76 ; 1 Phillips on Insurance, § 172 ; *Mitchell* v. *The Home Insurance Company*, 31 Iowa, 465.

BARROWS, J.   The plaintiffs claim to recover a loss of $2,000 under a policy issued by the defendants upon a stock of fish scrap contained in the Atlantic Oil Company's Works in Boothbay.

After the testimony was out a default was entered, to be taken off if upon a full report of the testimony we conclude that the jury would not be authorized to find that the plaintiffs had an insurable interest in the property.

This stipulation differs, it will be seen, in more than one particular from the more common one which presents to this court the whole case, and all the questions both of law and fact with power to draw inferences as a jury might.

As the default is to stand if the jury would be authorized to find that the plaintiffs had an insurable interest, we must accept the stipulation as equivalent to an admission that no question is

made as to plaintiffs' right to recover, if they had an insurable interest, and that the testimony of plaintiffs' witnesses is to be accepted as true as to all matters respecting which there is any conflict.

In all cases of conflicting testimony the jury are authorized to find the facts in accordance with the statements of those witnesses whom they may deem most deserving of confidence and belief; and it cannot be said that they "would not be authorized to find" all the facts as plaintiffs' witnesses state them.

The jury "would be authorized to find," then, that Luther Maddox, a manufacturer of porgy oil and fish scrap, dry and crude, in pursuance of negotiations with the plaintiffs looking to his furnishing them with large quantities of dried fish scrap, had received advances from the plaintiffs before the taking out of this policy to the amount of $2,000, and had the dried fish scrap on hand to an amount in value considerably exceeding the sum advanced by the plaintiffs.

As the fish scrap or porgy chum was not wanted by plaintiffs until the following season, it remained at the Oil Company's Works, not separated from that belonging to Maddox, under Maddox's agreement to store it for plaintiff, free of expense and deliver it when wanted, and to get it insured in order to secure the plaintiffs' advances.

In pursuance of this agreement Maddox told the agent of the defendant company that plaintiffs had scrap at Boothbay, that they had made advances to him to the amount of $2,000, and he wanted a policy to protect their interest in case of loss. He procured a policy on his own interest at the same time for a like amount. The cash value of the whole stock of fish scrap at the time of the insurance and of the fire was $5,000, and it were very nearly a total loss. No part of it had ever been delivered to plaintiffs, but Maddox stated fully to the agent of the insurance company the situation and condition of the stock "and the risk the company was taking just as it was."

He testified in substance that the porgy chum burned was the same upon which the plaintiffs had made the advancements to him—that there were 150 tons in the whole, of which he owned

three-fifths and the Cumberland Bone Company two-fifths by virtue of the advances made him—that he held it for them to be delivered as wanted.

The Insurance company paid the amount of the policy running to Maddox but resist the claim of the plaintiffs on the ground that Maddox had made no delivery to them—that the property in no specific part of the porgy chum had ever passed from Maddox to the plaintiffs—was not at their risk, and so they had no insurable interest.

If it were essential to the existence of an insurable interest that the assured should have a legal title to the property upon which the insurance is effected, the case would present a different and perhaps more difficult question. But such is not the law. An equitable interest suffices. Chancellor Kent lays down the law thus: "The interest need not be a property in the subject." "It does not necessarily imply a right to or property in the subject insured. It may consist in having some relation, to or concern in the subject of the insurance which relation or concern may be so affected by the peril as to produce damage."

The result is that a person so circumstanced that he is interested in the safety of a thing, derives a benefit from its existence and suffers prejudice from its destruction, has an interest in that thing which is the lawful subject of insurance.

"An equitable as well as a legal interest, and an interest held under an executory contract are valid subjects of insurance." *Columbian Ins. Co.* v. *Lawrence*, 1 Peters Sup. C., 25. Mortgagor and mortgagee, pledgor and pledgee both have an insurable interest in the subject of the mortgage or pledge—the former to the full value of the property, the latter to the amount of his debt thereby secured.

For further illustrations of interests which are deemed insurable, so as to relieve the contract from the character of a wager, and prevent it from being deemed unavailable for want of insurable interest, see *Locke* v. *No. American Ins. Co.*, 13 Mass., 61; *Bartlett* v. *Walter*, Id., 267; *Oliver* v. *Greene*, 3 Mass., 133; *Rider* v. *Ocean Ins. Co.*, 20 Pick., 259; *Waters* v. *Monarch*

*F. & L. Ass. Co.*, 5 El. & Bl., 870 ; *Godin* v. *London Ass. Co.*, 1 Burr. 489 ; *Wolff* v. *Horncastle*, 1 Bos. & Pul., 316 ; *Sutherland* v. *Pratt*, 12 Mees. & Wels., 16 ; *Wells* v. *Philadelphia Ins. Co.*, 9 Serg. & Rawle, 103 ; *Ins. Co.* v. *Chase*, 5 Wall., 513.

Mr. Arnold in his Treatise on Insurance, vol. 1., p. 229, premising that "it is very difficult to give any definition of an insurable interest," states it, "as the fair result of the cases, that, in order to have an insurable interest, it is not necessary to have an absolute vested ownership or property in that which is insured ; it is sufficient to have a right in the thing insured, or a right derivable out of some contract about the thing insured of such a nature that the party insuring may have benefit from its preservation and prejudice from its destruction." We think that the plaintiffs under the facts here developed had such an interest in the subject of insurance. Maddox was holding it in good faith in trust for them. He recognized the interest they had acquired in it by their advances, held it subject to their order and procured the insurance in their name to protect their advances, refraining from insuring it in his own, and making known to Mr. Plummer, the defendants' agent, the situation and condition of the property and the fact that advancements had been made to him thereon by the plaintiffs and that the object of the policy was to protect those advances. It is true that so long as Maddox was solvent the plaintiffs might not lose by the destruction of the property. But the same is true of every mortgagee or pledgee. We fail to see how the insurers could be injuriously affected, suppose it true that the agent understood that the part belonging to the plaintiffs had been separated, weighed off, and formally delivered. It does not appear that the risk they assumed was changed or affected. As we settle the only question presented by the report in the plaintiffs favor, the entry must be

*Default to stand. Judgment for
the plaintiffs for $2000 and
interest from Sept.* 10, 1872.

Appleton, C. J., Walton, Dickerson, Virgin and Peters, JJ., concurred.