CROSSMAN *v.* AMERICAN INSURANCE COMPANY OF NEWARK, N. J.

*1. INSURANCE—FIRE INSURANCE—TITLE TO REALTY.

Where one verbally applies for fire insurance and he is not asked as to the state of the title, and he does not act fraudulently, he is not required to disclose the exact condition of the title.

2. SAME—FIRE INSURANCE—BREACH OF CONTRACT—FORFEITURE.

If an applicant for fire insurance discloses the exact condition of his interest in the property insured in a verbal application to the insurer's agents, the insurer cannot claim a breach of condition so as to work a forfeiture of the contract and render it void from the beginning on the ground that insured was not the sole and unconditional owner of the property.

3. SAME—INSURABLE INTEREST—GAMBLING CONTRACTS.

Policies of insurance founded upon mere hope and expectation and without some interest in the property, or the

life insured, are objectionable and void as a species of gambling, and are called wagering policies.[1]

4. SAME—FIRE INSURANCE—INSURABLE INTEREST, WHAT CONSTITUTES.

The principal consideration in determining the existence of an insurable interest in property insured against loss by fire is not what is the title of the insured, or whether he has a lien thereon or possession, but whether he will suffer pecuniarily by its loss.

5. SAME—FIRE INSURANCE—OPTIONS.

The possessor of an option for the purchase of property, for which he has paid a considerable sum, has an insurable interest in the property.

Error to Wayne; Cross, J., presiding. Submitted June 22, 1917. (Docket No. 23.) Decided September 27, 1917.

Assùmpsit by John M. Crossman against the American Insurance Company of Newark, New Jersey, on a policy of insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*Lucking, Helfman, Lucking & Hanlon,* for appellant.

*James H. Pound* (*Charles H. Hatch,* of counsel), for appellee.

On April 3, 1912, Maria McDonald was the owner of a land contract for the purchase of certain premises in Highland Park, located on Hamilton boulevard, consisting of two stores, with apartments then occupied by her, on the second floor. She was in arrears on her contract, and on this day surrendered it to plaintiff, taking back an option to purchase it at any time within one year upon payment of $5,261, with interest at 6 per cent. By the terms of this option

[1] Authorities passing on the question as to insurable interest of tenant in leased property, see note in 42 L. R. A. (N. S.) 135.

she was to pay $10 per month for the dwelling part of the property, and after May 6th plaintiff was to collect the other rents, for which he was to account on her paying the amount above mentioned. Daniel McDonald, a son of Maria McDonald, was indebted to Donaldson Craig, and on November 20th they came to an accounting, and there was found due Mr. Craig $2,531.28. To pay this sum Mrs. McDonald then assigned and transferred her option on the Hamilton boulevard property to him. He informed plaintiff of this assignment, and learned in the conversation the amount of insurance carried on the building. On January 24, 1913, the policy of insurance here involved was issued through Eliot & Haviland, defendant's local agents. The application for the insurance was verbal, and no inquiry was made as to the condition of the title. Mr. Craig, however, voluntarily and fully told the agents the state of the title as he had learned it, and the policy was issued to him as the assured "on property sold to assured on contract; loss, if any, payable first to John M. Crossman and then to assured as their interest may appear." Mr. Craig did not read the policy, which was the Michigan standard form. After the assignment from Mrs. McDonald to Craig, and after plaintiff knew of it, he gave Mrs. McDonald notice to quit, but nothing further seems to have been done, and she remained in the apartments until the fire. The record discloses that although plaintiff was the owner of the record title of the premises, he had given to one Campbell the right to redeem, on payment of the amount due from Campbell to plaintiff. On January 29, 1913, the fire occurred, and proof of loss was seasonably filed. On April 3, 1913, Craig tendered to plaintiff $5,700, and requested a deed. The parties disagreed as to the amount due, and a bill was filed for specific performance. Pending that suit, by agreement between them,

Craig assigned any interest he might have under the policy of insurance to plaintiff, and this action was brought, resulting in a recovery in the circuit court. Defendant brings the case here.

FELLOWS, J. (*after stating the facts*). It is insisted on behalf of defendant that the policy is not enforceable, because: (1) at the time the policy was issued Craig was not the unconditional and sole owner of the property; (2) that he did not have an insurable interest.

1. The testimony is undisputed that the application for this insurance was verbal, and that Mr. Craig was not inquired of as to the state of his title. There is no claim of any fraud practiced by him, or any deceit on his part. Under the holdings of this court, he was not required, under these circumstances, to show the exact condition of his title. *Brunswick-Balke-Collender Co.* v. *Assurance Co.*, 142 Mich. 29 (105 N. W. 76); *Guest* v. *Insurance Co.*, 66 Mich. 98 (33 N. W. 31); *Hoose* v. *Insurance Co.*, 84 Mich. 309 (47 N. W. 587, 11 L. R. A. 340); *Hall* v. *Insurance Co.*, 93 Mich. 184 (53 N. W. 727, 18 L. R. A. 135, 32 Am. St. Rep. 497). Mr. Craig, however, advised the agents of the company what his interest was, and they therefore knew before the policy was issued that he was not the unconditional and sole owner of the property. Defendant cannot now claim a breach of condition then existent, and then known to it, to work a forfeiture of the contract of insurance, and rendering it void from the beginning. We have so recently considered the question of whether an insurance company may defend on the ground of a breach of condition, which existed at the time the policy was issued, to the knowledge of the agent, and therefore to the knowledge of the company, that we content ourselves with calling attention to that case, and the authorities there cited.

*Gordon* v. *Insurance Co.,* 197 Mich. 226 (163 N. W. 956).

2. It was pressed upon the court at the argument with vigor that Craig did not have an insurable interest in the property, and for this reason plaintiff must fail in his right of recovery, and the question is fully discussed in the briefs filed. This presents the meritorious question in the case. Policies of insurance founded upon mere hope and expectation and without some interest in the property, or the life insured, are objectionable as a species of gambling, and so have been called wagering policies. All species of gambling policies were expressly prohibited in England by Stat. 19 Geo. II, chap. 37, and have been treated as illegal in this country upon the principles of that statute, without acknowledging it as authority. Here, such contracts of insurance are treated as contravening public policy, and are therefore void. If this policy falls within this class, it is void, and prevents plaintiff's recovery. If it does not, this judgment must be affirmed.

The argument of the defendant is that the assured must have title to the property, either legal or equitable or a lien thereon, in order to have an insurable interest in the property such as is contemplated by the law; that in the instant case Craig's interest was but that of an optionee, and therefore not insurable. In this defendant is in error. An insurable interest does not, of necessity, depend upon ownership of the property. It may be a special interest entirely disconnected from any title, lien, or possession. If the holder of an interest in property will suffer direct pecuniary loss, by its destruction, he may indemnify himself therefrom by a contract of insurance. The question is not what is his title to the property, but rather, would he be damaged pecuniarily by its loss. If he would, he has an insurable interest. That in-

terest may be derived by possession, enjoyment, or profits of the property, security or lien resting upon it, or it may be other certain benefits growing out of or dependent upon it. It was said by Mr. Justice Gray, speaking for the court in *Harrison* v. *Fortlage*, 161 U. S. 57 (16 Sup. Ct. 488):

"It is well settled that any person has an insurable interest in property, by the existence of which he will gain an advantage, or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of the property itself."

This case involved a consignment of sugar where, by the terms of the contract, the property did not pass to the buyer until it left the ship's tackle. The case of *Getchell* v. *Insurance Co.*, 109 Me. 274 (83 Atl. 801, 42 L. R. A. [N. S.] 135, Am. & Eng. Ann. Cas. 1913E, 738), involved the question of whether a tenant had an insurable interest in the property. It is an interesting case, and quite fully considers the authorities on the subject. Speaking for the court it was said by Mr. Justice Cornish:

"The crucial question therefore is, Will the insured be directly and financially affected by the loss of the property insured? If so, he has such an interest as the law will recognize. The loss must not be indirect or sentimental, but direct and actual. It is not necessarily an interest in the property in the sense of title, but a concern in the preservation of the property and such a relation to or connection with it as will necessarily entail a pecuniary loss in case of its injury or destruction. This opens a wide field, and the decisions take an extensive range with a growing tendency to expand rather than to contract the scope of the term."

In the case of *Rohrbach* v. *Insurance Co.*, 62 N. Y. 47 (20 Am. Rep. 451), a much-cited case, after considering the writers on this subject, it was said:

"But the result of a comparison of the textwriters above cited is that there need not be a legal or equit-

able title to the property insured. If there be a right in or against the property, which some court will enforce upon the property, a right so closely connected with it, and so much dependent for value upon the continued existence of it alone, as that a loss of the property will cause pecuniary damage to the holder of the right against it, he has an insurable interest."

Mr. Justice Andrews, speaking for the same court in *Riggs* v. *Insurance Co.*, 125 N. Y. 7 (25 N. E. 1058, 10 L. R. A. 684, 21 Am. St. Rep. 716), said:

"It would seem, therefore, that whenever there is a real interest to protect and a person is so situated with respect to the subject of insurance that its destruction would or might reasonably be expected to impair the value of that interest, an insurance on such interest would not be a wager within the statute, whether the interest was an ownership in, or a right to the possession of, the property, or simply an advantage of a pecuniary character having a legal basis, but dependent upon the continued existence of the subject."

It was said by the supreme court of Massachusetts, in the case of *Williams* v. *Insurance Co.*, 107 Mass. 377 (9 Am. Rep. 41):

"And it is now well established that even one who has no title, legal or equitable, in the property, and no present possession or right of possession thereof, yet has an insurable interest therein, if he will derive benefit from its continuing to exist, or will suffer loss by its destruction."

The rule is tersely stated in 14 R. C. L. p. 910:

"It may be said, generally, that any one has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction."

Without further quotation we content ourselves with citing the following: *Berry* v. *Insurance Co.*, 132 N. Y. 49 (30 N. E. 254, 28 Am. St. Rep. 548); *Merrett* v. *Insurance Co.*, 42 Iowa, 11; *Schaeffer* v. *Insurance Co.*, 113 Iowa, 652 (85 N. W. 985) (a tenant at will);

*Home Ins. Co.* v. *Mendenhall,* 164 Ill. 458 (45 N. E. 1078, 36 L. R. A. 374) (an extreme case); *German Ins. Co.* v. *Hyman,* 34 Neb. 704 (52 N. W. 401); *Graham* v. *Insurance Co.,* 48 S. C. 195 (26 S. E. 323, 59 Am. St. Rep. 707); *Strong* v. *Insurance Co.,* 10 Pick. (Mass.) 40 (20 Am. Dec. 507, and note at page 510); *Commercial Fire Ins. Co.* v. *Capital City Ins. Co.,* 81 Ala. 320 (8 South. 222, 60 Am. Rep. 162); *Cumberland Bone Co.* v. *Insurance Co.,* 64 Me. 466; *Wainer* v. *Insurance Co.,* 153 Mass. 335 (26 N. E. 877, 11 L. R. A. 598); *Hayes* v. *Insurance Co.,* 170 Mass 492 (49 N. E. 754); *People's St. R. Co.* v. *Spencer,* 156 Pa. 85 (27 Atl. 113, 36 Am. St. Rep. 22); *Warren* v. *Insurance Co.,* 31 Iowa, 464 (7 Am. Rep. 160); 1 May on Insurance (4th Ed.), § 80.

The unrippled current of authority is to the effect that title to, or lien upon, property, is not essential to an insurable interest. Measured by the standard fixed in the cases quoted from, and cited, Did Craig have an insurable interest in this property? He had an option upon this property, a right to buy it, an enforceable right, for which he paid over $2,500. Was that right of more value with the building standing than with the building destroyed? Would he suffer direct pecuniary loss in the value of his right by its destruction? Would he be damaged pecuniarily by the loss of the building? To ask these questions is to answer them. Obviously this contract of insurance was not a wagering, gambling contract prohibited by public policy, but was valid and enforceable.

The judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.