## MOSS v. UNION MUTUAL INSURANCE COMPANY OF PROVIDENCE.

### OPINION OF THE COURT.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—AFFIRMATIVE DEFENSE.

 Issues not presented to the trial court are not proper matter for appellate consideration, as a general rule; but this rule does not apply where the issue in question was part of an affirmative defense in defendant's answer and was also raised by defendant in his motion for judgment notwithstanding verdict or a new trial.

2. INSURANCE—WAGERING CONTRACT—INSURABLE INTEREST.

 An insurance contract with a person who has no insurable interest in the property which is the subject of insurance is a wagering contract, which is contrary to public policy and therefore void.

3. SAME—INSURABLE INTEREST—DEFINITION.

 Risk of direct pecuniary loss by damage to or destruction of the insured property is the definition of an insurable interest in the person bearing the risk.

4. SAME—LACK OF INSURABLE INTEREST—WAIVER.

 Lack of an insurable interest is not a defense that can be waived by an insurer.

5. SAME—RINGS—GIFTS—INSURABLE INTEREST.

 Persons insured under scheduled property floater policy *held*, not entitled to recover for damage to engagement ring which their son had given his fiancee, since at the time of injury, the insured had no insurable interest in the property.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 726.
[2, 5, 7] 29 Am Jur, Insurance § 433.
[3, 6, 8, 9] 29 Am Jur, Insurance §§ 432, 440.
[4] 29 Am Jur, Insurance § 437.
[10, 11] 29A Am Jur, Insurance § 1020.

Dissenting Opinion.
Levin, J.

6. Insurance—Insurable Interest—Public Policy.
If the person insured has no insurable interest in the property insured, the insurance contract is a wagering contract which is contrary to public policy and therefore void.

7. Same—Pecuniary Loss—Wagering Contract.
Evidence that the insured has suffered a pecuniary loss establishes that there was not a wagering contract, but absence of pecuniary loss does not always mean that there was a wagering contract.

8. Same—Insurable Interest.
An insurable interest in property may be derived by possession, enjoyment, or profits of the property, security or lien resting upon it, or it may be other certain benefits growing out of or dependent upon it.

9. Same—Insurable Interest.
A person has an insurable interest in property if he derives benefit from its existence or would suffer loss by its destruction.

10. Same—Waiver of Conditions—Floater Policy.
Finding of trial judge that condition of scheduled property floater insurance policy that property be owned by or be in the custody of the insured or members of his household was waived by insurer whose agent wrote coverage with full knowledge that diamond ring listed was to be given by plaintiffs' son to his fiancee was supported by evidence in action for damage to the ring.

11. Same—Principal and Agent—Knowledge.
The knowledge of an agent of an insurance company will be deemed the knowledge of the insurer.


Appeal from Common Pleas Court of Detroit, Stanczyk (Benjamin C.), J. Submitted Division 1 November 9, 1967, at Detroit. (Docket No. 3,111.) Decided April 26, 1968.

Complaint by Sol Moss and Ida Moss against Union Mutual Insurance Company of Providence,

a Rhode Island corporation, to recover on a contract of insurance. Judgment for plaintiff. Defendant appeals. Reversed and action dismissed.

*Boesky & Lippitt,* for plaintiffs.

*Ward, Plunkett, Cooney, Rutt & Peacock (John P. O'Leary,* of counsel), for defendant.

J. H. GILLIS, J. On May 13, 1964, defendant Union Mutual Insurance Company of Providence issued a 3-year "scheduled property floater" to plaintiffs Sol and Ida Moss covering specific property listed in the personal articles schedule endorsement. On August 26, 1964 this endorsement was amended to include 1 lady's diamond ring which had been purchased by Sol Moss, who gave it to his son. The younger Moss then gave it to Linda Epstein, whom he subsequently married. In May, 1966, on Mother's Day, Linda discovered a large chip in the diamond and on the following day Sol Moss filed a claim which was denied by defendant. Suit was instituted in the common pleas court for the city of Detroit, which resulted in a nonjury verdict for plaintiffs on October 13, 1966. Defendant's motion for judgment notwithstanding the verdict or for a new trial was denied November 14, 1966.

The questions raised on appeal will be discussed seriatim.

### Scope of Review.

Plaintiffs first contend that "defendant-appellant cannot for the first time on appeal argue that plaintiff-appellees failed to sustain pecuniary loss and thus have no insurable interest, when defendant-appellant failed to bring this issue to the attention

of the trial court." Specifically, plaintiffs object to introduction at this juncture of the element of lack of "pecuniary loss"; they claim that this represents a new issue. Plaintiffs further state that it would be "manifestly unfair for this Court to discuss and determine questions raised here for the first time."

We agree that as a general rule issues not presented to the trial court are not proper subject matter for appellate consideration. The rule urged by plaintiffs is not applicable in this case, since lack of insurable interest was set up as an affirmative defense in defendant's answer and was again advanced by defendant in its motion for judgment notwithstanding the verdict or for a new trial. The phrase "pecuniary loss" does not signify a concept separate and distinct from insurable interest. Rather, the risk of direct pecuniary loss by damage to or destruction of the described property is the very definition of insurable interest. *Crossman* v. *American Insurance Company of Newark, N. J.* (1917), 198 Mich 304. Thus we hold that defendant does not by the use of this phrase inject a novel issue into this case.

## *Waiver.*

A provision of this insurance policy stated:

"This endorsement covers only with respect to such and so many of the following classes of property as are indicated by a specific amount of insurance applicable thereto, and a premium charged therefor, which property is owned by or in the custody or control of the insured and members of the insured's family of the same household."

It is conceded that Linda and her husband were not members of the "insured's family of the same household."

When the ring was listed in the endorsement on the policy in August of 1964, a written statement of appraisal was sent by a jeweler to plaintiffs who contend that the statement, which indicated the wearer of the ring to be Linda Epstein, became part of the policy. Additionally it was contended that defendant had knowledge that Linda Epstein was not "of the same household" with plaintiffs through oral communications with defendant's soliciting agent.

The thrust of plaintiffs' argument is that the defendant could and did waive the restriction set out above.

The question of waiver of lack of insurable interest in property was settled early in Michigan by *Agricultural Insurance Company of Watertown, New York* v. *Montague* (1878), 38 Mich 548, in which Mr. Justice Cooley wrote at p 551:

"The argument was that, as the company, through its agent, had knowledge of all the facts, and still granted the policy, the issuing of the policy was a waiver of all objection on that score. This view was accepted by the court, and the jury was instructed accordingly. If the instruction was correct, it is manifest that any person may obtain insurance upon property without any right in it whatsoever; he has but to disclose the facts, and the policy, though only a wager policy, will be as legal as any other. But such a doctrine is at war with the fundamental principles of insurance, which require that a person shall have an insurable interest before he can insure: a policy issued when there is no such interest is void, and it is immaterial that it is taken in good faith and will full knowledge. The policy of the law does not admit of such insurance, however willing the parties may be to enter into it. The doctrine of waiver has obviously nothing to do with such a case."

This ruling of the *Montague Case* was followed with respect to life insurance in *Sun Life Assurance Company of Canada* v. *Allen* (1935), 270 Mich 272. See, also, 4 Appleman, Insurance Law and Practice, § 2122, p 19; *Patterson* v. *Durand Farmers Mutual Fire Ins. Co.* (1940), 303 Ill App 128, 138 (24 NE 2d 740, 744).

## *Existence of Insurable Interest.*

We are finally brought to the question of whether or not plaintiffs had an insurable interest at the time of the loss. Defendant contends that they did not.

The leading Michigan case on what constitutes an insurable interest in property is *Crossman, supra,* called by Appleman "one of the finest discussions and analyses of leading cases."[*] The opinion concludes in this manner, stating the test to determine the existence of an insurable interest:

"The unrippled current of authority is to the effect that title to, or lien upon, property, is not essential to an insurable interest. Measured by the standard fixed in the cases quoted from, and cited, Did Craig have an insurable interest in this property? He had an option upon this property, a right to buy it, an enforceable right, for which he paid over $2,500. Was that right of more value with the building standing than with the building destroyed? Would he suffer direct pecuniary loss in the value of his right by its destruction? Would he be damaged pecuniarily by the loss of the building?" *Crossman* v. *American Insurance Company of Newark, N. J., supra,* at p 311.

[*] 4 Appleman, Insurance Law and Practice, § 2123, p 22, footnote 30.

We thus must determine whether plaintiffs bore a risk of "direct pecuniary loss" with respect to the ring.

In *Macarty* v. *Commercial Insurance Co.* (1841), 17 La 365 (OS) (9 La 223 [NS] [1854 reprint]), plaintiff insured certain real property against fire and later gave the land to another, the only qualification on the gift being that the donee could only dispose of the land by last will and testament. Thereafter a fire occurred and plaintiff sought recovery on the policy. Recovery was denied on the basis of lack of insurable interest at the time of the loss, the court stating at p 369 (p 226 NS):

"A policy of insurance against fire is a personal contract of indemnity with the insured; if the latter parts with all his interest in the property before the loss happens, the policy becomes void unless it has been assigned to the new proprietor with the consent of the underwriters."

Facts even more closely resembling those involved in this appeal are found in *Ludeau* v. *Phoenix Insurance Co.* (1947, Tex Civ App), 204 SW2d 1008. A donor of an engagement ring sought recovery under an "all risks" policy when, after the gift, the ring was stolen from the donee, his fiancee. The claim was resisted by the insurer for lack of insurable interest. The court sustained the insurer, holding that even though the gift was "conditional," the donor at the time of the loss had no present insurable interest in the engagement ring.

In this case, plaintiffs have no title to the ring; nor do they show any reversionary, security, or other interest in it which might subject them to "direct pecuniary loss", by its damage or destruction. Logic, policy, and precedent militate against

the judgment of the common pleas court; it must therefore be reversed and the action dismissed.

Costs to appellant.

QUINN, J., concurred with J. H. GILLIS, J.

LEVIN, P. J. (*dissenting*). I do not think the contract of insurance entered into by the Mosses and the defendant insurance company covering their prospective daughter-in-law's engagement ring violated the public policy of this State. And whether it violated public policy is the core question.

The majority emphasizes *Crossman's*[1] inquiry whether the plaintiff there had been pecuniarily damaged by the loss of the building. But both the fore and aft of that opinion show the *fundamental* inquiry to be whether the policy of insurance is a wagering, gambling contract, not whether the insured will suffer a pecuniary loss. The *Crossman* opinion opened by stating the policy underlying the insurable interest rule, that a wagering, gambling contract of insurance contravenes public policy and, therefore, is void. It then stated the question (p 308): "If this policy falls within this class, it is void, and prevents plaintiffs' recovery. If it does not, this judgment must be affirmed." And at the end of the opinion (p 311): "Obviously this contract of insurance was not a wagering, gambling contract prohibited by public policy, but was valid and enforceable."

In determining whether a policy of insurance is a wagering, gambling contract, evidence that the insured has suffered a pecuniary loss, as in *Crossman*, establishes that the insurance policy is not of the prohibited kind. The converse is not necessarily true.

---

[1] *Crossman* v. *American Insurance Company of Newark, N. J.* (1917), 198 Mich 304.

The *Crossman* Court observed that the policy-holder's interest "may be derived by possession, enjoyment, or profits of the property, security or lien resting upon it, or it may be *other certain benefits* growing out of or dependent upon it." (Emphasis supplied.) (p 309) After considering various formulations of other courts, *Crossman* concluded (p 310):

"*The rule is tersely stated* in 14 RCL p 910: 'It may be said, generally, that anyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction.'" (Emphasis supplied.)

This record contains ample evidence to support a determination that the Mosses derived a benefit from the existence of the ring. Indeed, we could affirm on the basis that the evidence would have justified an express[2] finding that the Mosses had a pecuniary interest in their daughter-in-law's ring.

The Mosses had sufficient interest in her wearing a $1,000 diamond engagement ring to provide the ring. Having purchased the ring, they could have regarded their assumed obligation discharged. However, they paid an additional amount to insure the ring against loss. Having been importuned for one ring, they perhaps wished to protect themselves against a repeat performance. They might well have anticipated the possibility of yet another, and successful, plea from their son should the young lady, once having established herself as the wearer of such an ornament, lose it.

They were not strangers to the wearer. The loss of the ring could well be the source of further expense. Their son was not yet self-supporting, at least when it came to the purchase of such a ring.

---

[2] The trial judge did not file findings of fact. See GCR 1963, 517.1.

Presumably, part of the ring's value to them was whatever satisfaction their son and daughter-in-law would derive from her continued use of the ring. Since the perpetuation of that euphoric state, were the ring lost, could cost perhaps another $1,000, they might well expect the loss of the ring to be a financial loss to them.

Nor were they strangers to the ring. The purchase of the ring may well have required a sacrifice. The schedule of specifically insured property attached to their homeowner's policy shows this to be the most valuable item listed. It is not our task to measure the importance of the ring to the parties or to weigh it on our scale of values. Man does not live by bread alone. Their son's, their daughter-in-law's, and perhaps their own, peace of mind might have been or become involved. Their interest was not remote. Public policy, as expressed in the insurable interest doctrine, does not require its forfeiture.

The present law of insurable interest evolved from a futile search for symmetry with familiar doctrines of property law.[3] The sound and simple policy of refusing to enforce wagering contracts has, as precedents multiplied, become a body of law too frequently forgetful of the policy.

The query "Is there an insurable interest?"[4] tends to direct a lawyer's thinking to the law of property. The profession naturally associates an interest with a property interest, and a property interest with a pecuniary interest. However, if the question put is

---

[3] See, *e. g.*, *Citizens State Bank of Clare* v. *State Mutual Rodded Fire Ins. Co. of Michigan* (1936), 276 Mich 62; *Guiterman* v. *German-American Insurance Co.* (1897), 111 Mich 626.

[4] It has been suggested that "insurable *relationship*" would be a more accurate term, and, therefore, one less calculated to misdirect the inquiry. Harnett and Thornton, Insurance Interest in Property: A socio-economic re-evaluation of a legal concept, 48 Colum L R 1162, 1188 (1948).

whether the insured was a gambler or wagerer, an entirely different image comes to mind. It is of fundamental importance here, as always, to ask the right question. Were the Mosses gamblers or wagerers? If they were, then they did not have an insurable interest. If they were not, then they did.

*Crossman,* as quoted in the majority opinion, says (p 311) that "title to, or lien upon, property, is not essential to an insurable interest." Earlier the *Crossman* Court observed (p 308) that "it may be a special interest entirely disconnected from any title, lien or possession." Yet the majority here concludes with the statement that the Mosses had neither title to nor any reversionary or security interest in the ring. It has been observed:

"The requirement of insurable interest in property insurance, like most legal abstractions, has developed over the centuries primarily through judicial resolution of relatively isolated problems. Seldom have the courts examined the entire practice in terms of meaningful underlying policies, and the myopic views of older cases, canonized by precedent, often reflect themselves too brightly in later years to the detriment of sound modern analysis." Harnett and Thornton, Insurable Interest in Property: A socio-economic re-evaluation of a legal concept. 48 Colum L R 1162, 1163 (1948).

In the cited article, the authors discuss varying tests, *e.g.,* "property right," "contract right" and "legal liability," but conclude the best is the so-called "factual expectation of damage" test—the expectation of economic advantage if the insured property continues to exist, or, stated negatively, the expectation of economic disadvantage upon damage to the insured property. They concede precedential support for the test they favor is "uncertain."

Any test will inevitably fail because attention will inevitably focus on the test rather than on the

policy. If there is to be a test, the rule adopted in
*Crossman* would probably serve best, *i.e.,* will the
insured derive benefit from the existence of the prop-
erty or suffer loss from its destruction. But even
that may prove too narrow. The real question in
every case is whether the insurance policy under
consideration contravenes public policy. At best,
all other queries merely help organize one's thinking
—and may just as well disorganize it. At worst,
they may simply provide us with a peg on which
to hang our conclusive hat.

While, as the majority points out, no act of the
insurer or agent can waive the insurable interest
requirement, the trial judge could properly consider
testimony of the agent who wrote the policy in
appraising whether it would violate the public pol-
icy of this State to permit the Mosses to insure the
ring. The agent testified that in a large number
of cases the young man's father purchases and in-
sures the ring, that his agency writes such insurance
2 or 3 dozen times a year, that the customary proce-
dure in each case is to bind the insurance pending
receipt of an appraisal and determination by the
insurer, based on information concerning the girl's
school, work, and general living situation, whether
it desires to write the risk.

An adequate commentary on the state of the law
of insurable interest[5] is that there is still a question

---

[5] Of interest is *Stauder* v. *Association General Fire Co.* (1957),
105 Ohio App 105 (5 Ohio Ops 2d 396, 151 NE2d 583), holding the
father of minor children who is charged with their support and
subject to the further order of the court, has an insurable interest
in their clothing and in furniture and other household goods, belong-
ing to his former wife, used in their care and custody. In *American
Indemnity Company* v. *Southern Missionary College* (1953), 195 Tenn
513 (260 SW2d 269, 39 ALR2d 714), the court held that the stock-
holder of a corporation had an insurable interest in its property.
See annotation: Insurable interest of stockholder in corporation's
property, 39 ALR2d 723. See, also, Insurable Interest in Property:
An Expanding Concept, 44 Iowa L R 513 (1959). In a considerable
number of cases the courts have struggled with the various tests in

whether one spouse suffers an insurable loss upon the destruction of property owned by the other.[6]

The view I take requires consideration of the insurer's claim that the Mosses may not recover because the policy covers only property which "is owned by or in the custody or control of the insured and members of the insured's family of the same household."

The daughter-in-law was not a member of the insured's family of the same household. The Mosses assert, however, that the insurer waived that requirement. At trial the agent testified that before the insurance was written an appraisal of the ring was obtained and forwarded to the insurer, containing the following statement: "The wearer of the ring is Linda Epstein," the young lady's maiden

_____

an effort to fit their facts within them. See, *e. g.*, *Bernhardt* v. *Boeuf & Berger Mutual Insurance Company* (CA Mo, 1959), 319 SW 2d 672 (the plaintiff had an insurable interest in a house built on land owned by his mother which she had agreed to convey upon completion); *Kludt* v. *German Mutual Fire Insurance Co.* (1913), 152 Wis 637 (140 NW 321) (a husband had an insurable interest in property occupied by him but owned by his wife); *Liverpool & London Globe Insurance Co.* v. *Bolling* (1940), 176 Va 182 (10 SE2d 518) (a divorcee had an insurable interest in property which her father-in-law permitted her to occupy for the purpose of conducting a general merchandise business from which she derived a livelihood for herself and her children, his grandchildren). All the cases referred to in this footnote can, of course, be distinguished on their facts from the case at bar. For a comprehensive survey of the cases, see Couch on Insurance 2d, § 24:12 *et seq.*

[6] See annotation: Insurable interest of husband or wife in other's property, 68 ALR 362, and 27 ALR2d 1959. In *Agricultural Insurance Company of Watertown, New York* v. *Montague* (1878), 38 Mich 548, the court held that a husband does not have an insurable interest in his wife's property (p 552): "the question arises here precisely as it would had the [insured property owned by the wife] been owned by a stranger." Later the Court found an insurable interest in the husband where there was a tenancy by the entireties. *Clawson* v. *Citizens' Mutual Fire Insurance Co.* (1899), 121 Mich 591. Under many policies written today the spouse is automatically deemed an insured, and this perhaps explains why the matter has not been recently litigated in Michigan. Indeed, this is the first Michigan case in over 75 years to declare a policy of property insurance invalid because the insured did not have an insurable interest. Another explanation may be that insurance companies do not raise the defense. The defendant's former agent testified that the defendant no longer writes policies in this State.

name.   He further testified that, prior to writing
the insurance, the insurer's general agent reviewed
the file to decide whether it wished to underwrite
the risk and was then advised that Miss Epstein
lived in a household other than that occupied by
the Mosses.   On that evidence the trial judge was
justified in concluding the insurer was aware of the
circumstances and waived the condition now relied
on by it.

"A policy of insurance is not void for the reason
that the insured was not [as required by the policy][7]
the sole and unconditional owner of the property,
where it appeared that the insurer had full knowl-
edge of all the facts and circumstances prior to
issuing the policy." *Perkins* v. *Century Insurance
Company, Ltd.* (1942), 303 Mich 679, 683, quoting
*O'Neill* v. *Northern Assurance Co.* (syllabus) (1909),
155 Mich 564.   For earlier cases so holding see
*Crossman* v. *American Insurance Company, supra,*
p 307; *Miotke* v. *Mechanics' Insurance Co.* (1897),
113 Mich 166, 168, 169; and *Brunswick-Balke-Col-
lender Co.* v. *Northern Assurance Co.* (1907), 150
Mich 311, 314.

That the knowledge of the agent will be deemed
the knowledge of the insurer, see *Hawkeye Casualty
Co., Inc.,* v. *Holcomb* (1942), 302 Mich 591, 604; *Cap-
paert* v. *Emmco Insurance Co., Inc.,* (1943), 304
Mich 130, 134; *Prudential Insurance Company of
America* v. *Cusick* (1963), 369 Mich 269, 283; and
*Lipsky* v. *Washington National Insurance Company*
(1967), 7 Mich App 632, 636.

In *Clawson* v. *Citizens' Mutual Fire Insurance Co.*
(1899), 121 Mich 591, the insured had stated "deed"

---

[7] The Michigan standard policy of fire insurance once provided
that the entire policy shall be void, unless otherwise agreed in writ-
ing, "if the interest of the insured be other than unconditional and
sole ownership when loss or damage occurs."   CL 1929, § 12572.   This
provision was eliminated by PA 1945, No 265.

in answer to an inquiry as to the nature of his title, whereas he held the property with his wife as tenants by entireties, a state of title violating the policy's requirement that the insured be the unconditional and sole owner of the property. Acknowledging this, the court, nevertheless, found the condition was waived, stating that where the company does nothing in the face of "facts which may be said to put the company upon inquiry in relation to the title, it is not unreasonable to say that there is such waiver." (p 593)[8]

I would affirm the judgment.

---

[8] In *Gordon* v. *St. Paul Fire & Marine Insurance Co.* (1917), 197 Mich 226, 234, a provision eliminating coverage where the property was unoccupied more than 10 days was deemed waived when the company issued the policy with knowledge that the property was then unoccupied.