John **KLUKAVY** and Theodore Fitzgerald, Jr., Plaintiffs,

v.

UNITED NATIONAL INSURANCE COMPANY, Defendant.

LAFAYETTE–ORLEANS, INC., Plaintiff,

v.

UNITED NATIONAL INSURANCE COMPANY, Defendant.

Civ. A. Nos. 84–5051, 85–70760.

United States District Court, E.D. Michigan, S.D.

Feb. 26, 1987.

Robert Nersesian, Thav & Gross, Birmingham, Mich., for cross-defendant Lafayette-Orleans, Inc.

Donald J. Gasiorek, Sommers, Schwartz, Silver & Schwartz, Southfield, Mich., for plaintiffs Klukavy and Fitzgerald.

## MEMORANDUM OPINION
## AND ORDER

ANNA DIGGS TAYLOR, District Judge.

This action involves a dispute over entitlement to insurance proceeds payable by United National Insurance Company (United National) as a result of the destruction by fire of a bar in Detroit, Michigan known as The Perfect Blend. At the time of the fire, the bar/restaurant was operated by John Klukavy and Theodore Fitzgerald (Klukavy & Fitzgerald). A purchase agreement for the sale of the business had been signed by Lafayette Orleans, Inc. (Lafayette Orleans) as the seller, and T.R.F.J., Inc., (T.R.F.J), a Michigan corporation of which Klukavy and Fitzgerald were the officers, directors and sole shareholders, as the purchasers. Following the fire, Lafayette-Orleans, as well as Fitzgerald and Klukavy, claimed entitlement to the insurance proceeds and each instituted an action against United National to that end.

The two cases were consolidated and United National filed a motion for interpleader. Subsequently, a stipulation and order was entered dismissing United National from the case following its payment of the proceeds of the policy into an interest bearing account for disbursement only upon order of the court. The remaining claims are the seller's and purchaser's cross claims against each other for the deposited funds upon which Lafayette-Orleans moved for summary judgment. The court heard oral argument and granted Lafayette-Orleans' motion from the bench on January 12, 1987, indicating that a written opinion would follow. This opinion constitutes the court's findings of fact and conclusions of law.

On February 6, 1982, Lafayette-Orleans and T.R.F.J. entered into a purchase agreement providing that T.R.F.J. would pur-

chase the lease, license, furniture, inventory, improvements and trade fixtures of Lafayette-Orleans for a purchase price of $87,000.00, payable as follows:

"(a) Buyer will assume Seller's Master Lease contract on the purchase of ABC equipment, said contract requiring payments of $711.36 per month for 22 months and a total of $15,649.00, plus a buyout payment of $2,850.00.

(b) The balance of the purchase price will be paid in cash at the time of closing, minus any amounts advanced to Seller or on Sellers' behalf, for interest on overdue I.R.S. taxes.

(c) The business will be transferred free and clear of all encumbrances.

(3) The Buyer assumes all risk of destruction, loss or damage due to casualty, up to the time of transfer."

On April 6, 1982, the purchase agreement was amended to delete the purchase of the Class C liquor license from the agreement, apparently because the parties became aware that such a transfer is illegal. The amended purchase agreement provided that transfer of the license and consummation of the sale were to occur at the closing, after approval of the transfer by the Liquor Control Commission.

Simultaneous with the signing of the original purchase agreement, Lafayette-Orleans entered into a management agreement with Klukavy and Fitzgerald whereby it was agreed that Lafayette-Orleans would engage Klukavy and Fitzgerald as managers of the establishment and that Klukavy and Fitzgerald would make available $30,-000.00 as a "loan or advance to Lafayette-Orleans, Inc., for improvements to the establishment, and the payment of current obligations."

The parties further agreed that upon the signing of the management agreement and its approval by the Liquor Control Commission of the State of Michigan, Klukavy and Fitzgerald would "assume full and complete control of the operation and management of [the establishment] subject to termination of the earlier of the following events:

(a) at the expiration of 3 years following the date of assumption of management;

(b) on the sale or transfer of the business.

(c) Managers will be in violations (sic) of contract if found delaying of any any future sale or transfer of Business and license.

(6) Amounts advanced or paid out on behalf of Lafayette-Orleans, Inc., as heretofore outlined, will be reimbursed to Managers on sale of the business or termination of this Agreement, by its terms.

(7) As compensation for services rendered, Managers will receive the minimun (sic) wage provide (sic) by Michigan Statute, plus a Commission in the amount of Five Per Cent (5%) of gross sales.

(8) Managers will maintain casualty insurance for protection against loss of property of the establishment."

Immediately following execution of the management agreement, Klukavy and Fitzgerald began operating the business. They purchased a policy of insurance listing as beneficiaries, Lafayette-Orleans, Klukavy and Fitzgerald "as their interest may appear."

On December 20, 1983, the Liquor Control Commission denied T.R.F.J.'s request for transfer of the liquor license. Klukavy and Fitzgerald appealed the decision. On February 17, 1984, during the pendency of the appeal, the Commission was informed via telephone by Fitzgerald's legal counsel that the transfer request was to be cancelled and that a letter of verification would follow. Such a letter was not received by the Commission until March 24, 1984, however, so the Commission considered the request at its February 9, 1984 meeting and affirmed the denial of the transfer. On February 22, 1984, the business was destroyed by fire.

The claim against Lafayette-Orleans is in two counts. Count I alleges that Klukavy and Fitzgerald are entitled to the insurance

proceeds as owners under the purchase agreement. Count II is a claim of account against Lafayette-Orleans premised upon the management agreement.

The insurance policy provides for payment to the insured (Klukavy, Fitzgerald and Lafayette Orleans) "as their interests may appear." Thus, the sole question for this court with respect to Count I is to determine the parties' interests in the property at the time of the fire. Klukavy and Fitzgerald ask the court to find that they completed all of their obligations under the purchase agreement. However, Klukavy and Fitzgerald were never parties to the purchase agreement and have no rights thereunder. The only agreement Klukavy and Fitzgerald had with Lafayette-Orleans was the management agreement which transferred no property. T.R.F.J., Inc., was the purchaser and that entity is not a party to this litigation.

Despite the implication of the complaint that the $30,000.00 loaned or advanced to Lafayette Orleans under the management agreement is somehow purchase money under the purchase agreement, such is clearly not the case. The management agreement specifically designates the $30,000.00 as "a loan or advance," which will be reimbursed to Klukavy and Fitzgerald upon the sale of the business or termination of the management agreement by its terms.

Any rights acquired by the parties under the management agreement are contract rights. "A simple contract creditor, without a lien either statutory or contract and owning a mere personal claim against his debtor, does not have an insurable interest in the property of his debtor." 43 Am. Jur.2d 974, § 949.

Fitzgerald and Klukavy have argued that the court should look beyond the names of the parties and determine that they are the real parties in interest. They claim that T.R.F.J. is their alter-ego and that any judgment entered in favor of or against them as individuals would be binding on the corporation. The cases upon which Klukavy and Fitzgerald rely for this proposition are wholly inapposite and in no way support their argument.

■■■ While Klukavy and Fitzgerald may be the real parties in interest, the fact remains that they have no cause of action as owners with respect to the insurance proceeds because it was the corporation, which was the purchaser. Their "alter-ego" argument is contrary to established theory of independent corporate existence. "One who has created a corporate arrangement, ... does not have the choice of disregarding the corporate entity." *Schenley Distillers Corp. v. United States*, 326 U.S. 432, 437, 66 S.Ct. 247, 249, 90 L.Ed. 181 (1946). "The corporate veil is never pierced for the benefit of the corporation or its stockholders. The procedure is only permissible against a ... stockholder." *Colin v. Altman*, 39 A.D.2d 200, 333 N.Y.S.2d 432, 433 (1972).

The court does not take issue with the fact that "title to, or lien upon property is not essential to an insurable interest." *Crossman v. American Ins. Co.*, 198 Mich. 304, 311, 164 N.W. 428 (1917). Nor does the court contest that one who derives a benefit from the existence of property or would suffer loss from its destruction has an insurable interest. *Id.* at 310, 164 N.W. 428. In this case, however, the court finds that between the corporation and the individuals, the corporation as the purchaser of the property was the entity which stood to lose by its destruction. Therefore, Count I of Klukavy and Fitzgerald's cross claim must be resolved against them as individuals.

The conclusion that T.R.F.J. as the purchaser is the only entity capable of suit under the purchase agreement necessitates resolution of whether the complaint may be amended to add the corporation as a party. Klukavy and Fitzgerald raised this argument at the hearing on the motion for summary judgment and thereafter filed a motion to amend which the court denied. This portion of the court's opinion will serve as an amendment to its order denying that motion.

■ The addition of T.R.F.J. as a party to this litigation would be futile. Although T.R.F.J. had the character of a contract purchaser at one time, it had no such interest at the time of the fire. The transfer of the business under the purchase agreement did not take place upon its execution, but could only occur upon "closing." No closing could occur until the transfer of the Class C liquor license was approved. Despite the amendment of the purchase agreement deleting the term providing for a sale of the liquor license, approval of the transfer by the Liquor Control Commission was a condition of the purchase. Transfer of the liquor license was never approved and thus, the agreement was never consummated, or closed.

Moreover, the evidence indicates that T.R.F.J. abandoned its application for transfer of the license, thereby rescinding the contract and leaving Lafayette-Orleans as the sole owner. Under these circumstances, where the grantor reacquires the right to the property, the grantor is entitled to the insurance proceeds. *Cetkowski v. Knutson,* 163 Minn. 492, 204 N.W. 528 (1925); *Russell v. Elliott,* 186 N.W. 824 (S.Dakota 1922); *Mitchell v. McDougall,* 62 Ill. 498 (1872).

> [Where the contract has been rescinded], the vendee has ceased to be a trustee of the purchase price, the obligation to pay which has vanished, and has become instead a trustee of the property itself. The duties of that trusteeship relate back, through the recission, to his going into possession originally. Therefore he holds for the beneficiary, the vendor, any insurance on the building which has been destroyed during his possession.

*Cetkowski,* 204 N.W. at 530

This result applies even when the recission is not effected until after the destruction of the property. *Id.* at 529. Thus, even if the telephone call from Fitzgerald's attorney to the Liquor Control Commission did not operate to rescind the agreement, recission occurred in March, 1984 when the Commission received the follow-up letter abandoning the request for transfer of the license. The recission, whenever it occurred, is retroactive to the date of possession. Therefore, even if the court were to allow the amendment of T.R.F.J. as a party to this action, Count I of its cross complaint would necessarily fail.

■ Nor do Klukavy and Fitzgerald have a cognizable claim to the insurance proceeds under the management agreement. The management agreement is an illegal contract and was so determined by the Michigan Liquor Control Commission.

Paragraphs 2 and 3 of the management agreement effectively transfer complete control of the business to Klukavy and Fitzgerald.

> "2. the parties agree that on the signing of this AGREEMENT and its approval by the Liquor Control Commission of the State of Michigan, MANAGERS shall assume *full* and *complete* control of the operation and management of LAFAYETTE ORLEANS dining lounge.... (emphasis added).
>
> 3. MANAGERS will be responsible for payment of rents, utilities and employees' salaries, and all operating expenses."

These provisions violate Rules 436.29 and 436.1117 of the Michigan Administrative Code which provides that:

> "No licensee shall sell or transfer his license, or any interest therein, without the consent of the liquor control commission. Nor shall any person ... obtain a license in his ... name for the use and benefit of another person whose name does not appear on the license."

Michigan Admin. Code R436.29(1).

> "An applicant for a retail license shall not enter into a participating agreement, except in either of the following situations:
>
> (a) Where the commission approves the participating agreement after a showing of good cause by the applicant.
>
> (b) Where the nonlicensee receives not more than 10% of the gross sales of the proposed licensed business."

Michigan Admin.Code R436.1117.

It is undisputed that Klukavy and Fitzgerald did assume full and complete control of the business immediately after signing the management agreement and prior to any approval from the Liquor Control Commission. Pursuant to this provision of the agreement, Klukavy and Fitzgerald received 100% of all gross sales of the business and made disbursements thereof in direct violation of the Michigan Administrative Code.

Moreover, the illegality of the management agreement was admitted by Klukavy and Fitzgerald in proceedings before the Liquor Control Commission. On April 4, 1983, the Commission filed a complaint against Lafayette-Orleans alleging that on February 6, 1982 Lafayette-Orleans did:

"(1) sell or transfer its license or an interest in the license to [Fitzgerald] and/or [Klukavy] and or [T.R.F.J.] without the prior approval of the Michigan Liquor Control Commission, contrary to Section 19b(1) of the Michigan Liquor Control Act, MCL 436.19b(1).
(2) allow a person, [Fitzgerald] and/or [Klukavy] and/or [T.R.F.J.], whose name does not appear on the license to derive a benefit from the license contrary to R436.1041, as promulgated in the Michigan Administrative Code."

In response to these charges Klukavy and Fitzgerald hired attorney Armand Bove to actually represent them and to nominally represent Lafayette-Orleans. Mr. Bove negotiated a settlement with the Liquor Control Commission which states that "[t]he Licensee will and does acknowledge all thirteen (13) of the above cited counts." The order, signed in conjunction with the settlement by a Michigan Administrative Law Judge, requires the licensee to pay a fine of $200.00 on each of the thirteen counts. Thus, the Michigan Liquor Control Commission has determined, and the parties to this litigation have admitted the illegality of the management agreement.

It is uniformly held that "where money has been paid for goods delivered in pursuance of a contract that is immoral, or in violation of a statutory provision, and the parties are in *pari delicto* and *particeps criminis*, the court will leave them where they have placed themselves." *Walhier v. Weber*, 142 Mich. 322, 325, 105 N.W. 772 (1905); *Simmer v. Cutter's Estate*, 194 Mich. 34, 41, 160 N.W. 605 (1916); *Kennedy v. Stemming*, 192 Mich. 600, 606, 159 N.W. 374 (1916).

Klukavy and Fitzgerald argue that even if the management agreement was partially tainted by illegality, they should be permitted to sever the illegal provisions and maintain an action on the remaining terms, namely, reimbursement of the $30,000.00 loan and payment to Klukavy and Fitzgerald of the minimum wage for hours worked and five percent of the establishment's gross profits.

The rule with respect to the severability of contract provisions under such circumstances is that

"[I]f any part of an agreement is valid, it will avail *pro tanto*, though another part of it may be prohibited by statute, provided the statute does not, either expressly or by necessary implication, render the whole void, and provided the sound part can be separated from the unsound, and enforced without injustice to the defendant. [citations omitted.]

\* \* \* \* \* \*

[W]here a claim consists of several distinct items, some good and others bad, or where the transaction is of such a nature that the good part of the consideration may be separated from the bad, the common law discriminates between them, by permitting recovery for the former while it repudiates the latter. [citation omitted.]"

*Smilansky v. Mandel Bros*, 254 Mich. 575, 582, 236 N.W. 866 (1931).

█ In this case the terms of the management agreement are not severable. The provision which essentially permitted Klukavy and Fitzgerald to assume total control of the operation and management of the business without the approval of the

**628**

Liquor Control Commission is an essential part of the consideration for the whole agreement. It is so intertwined with the other provisions that without it, the remainder cannot stand as a distinct, valid and enforceable contract. The illegality of the objectionable clause permeates and vitiates the agreement in its entirety and renders the whole agreement void. See *Kukla v. Perry*, 361 Mich. 311, 105 N.W.2d 176 (1960).

The court having informed the parties at oral argument of its finding that the management agreement in its entirety is unenforceable due to its illegality, Klukavy and Fitzgerald subsequently requested leave to amend their cross complaint by adding claims for payment of their services under a theory of quantum meruit, unjust enrichment or contract implied in law based on their payments to Lafayette-Orleans, and recission or restitution of amounts paid to Lafayette-Orleans.

Like the proposed amendment of T.R.F.J. as a party, the court finds that the amendment of these proposed claims to the cross complaint would be futile. In order to make an exception to the general rule regarding the nonenforceability of an illegal contract and allow amendment of the proposed claims, the court would of necessity have to first find that the purportedly untainted portions of the agreement were severable from the illegal terms. Here, the court has already found that the consideration for Klukavy and Fitzgerald's performance was unlawful.

Another exception to the general rule is that quasi-contractual recovery may be permitted if the performer is not equally as guilty as the other party to the illegal bargain. This court finds no basis whatsoever for such a finding. All of the parties were equally aware of the illegality at least by April, 1983 when the Liquor Control Commission brought charges against the licensee. Nor did Klukavy and Fitzgerald enter into the illegal agreement under duress or take any action to rescind the agreement upon learning of its illegality. Therefore, for the foregoing reasons,

IT IS ORDERED that cross-defendant Lafayette-Orleans' motion for summary judgment must be and hereby is granted.

IT IS SO ORDERED.